W. E. MOORE, Appellant, v. THE CHICAGO, ST. PAUL &
KANSAS CITY RAILWAY COMPANY.

**Railroads:** CONTRIBUTORY NEGLIGENCE.    Where one having control
1    of a team is driving over a railroad track at a street crossing with-
out looking or listening for trains, or, where there are obstruc-
tions rendering looking useless, without stopping to listen, it is
contributory negligence.

SAME.    Whether plaintiff, in approaching a railroad crossing, was
2    guilty of contributory negligence, because, after looking west
3    when about sixty feet from the crossing, he saw no engine
4    approaching, and then looked east, but did not look west again
5    until he was struck by a train, though he could have seen it if he
had looked when about forty feet from the crossing, is a question
for the jury, where he had no reason to expect a train to approach
from the west rather than the east, and had a right to presume

| 102 | 595 |
| 103 | 673 |

| 102 | 595 |
| 111 | 548 |

| 102 | 595 |
| 114 | 88 |

| 102 | 595 |
| 118 | 362 |

| 102 | 599 |
| 118 | 362 |

| 102 | 595 |
| 119 | 531 |

| 102 | 595 |
| 120 | 116 |
| d120 | 648 |
| j120 | 653 |
| j120 | 665 |

| 102 | 595 |
| d125 | 276 |
| f125 | 656 |
| 126 | 16 |

| 102 | 595 |
| 132 | 585 |

that an engine would not be running at a greater speed than that prescribed in an ordinance.

EVIDENCE.   Evidence that plaintiff injured at a railroad crossing by 4 cars moving over twenty miles an hour knew of the provisions of 6 an ordinance prohibiting trains from moving within the city limits at more than six miles an hour, is admissible on the question of plaintiff's contributory negligence in failing to look for a train from the direction from which the train which injured him came, within sixty feet of the crossing.

LADD, J., dissenting.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

SATURDAY, MAY 29, 1897.

ACTION to recover for personal injuries sustained by the plaintiff when driving across defendant's track at the crossing of east Eighth street, in the city of Des Moines, by reason of alleged negligence of the defendant's servants in the running and management of a locomotive engine. At the close of the testimony for the plaintiff, the defendant moved for a verdict, which motion was sustained, and verdict and judgment rendered accordingly. Plaintiff appeals.— *Reversed.*

*St. John & Stevenson* and *Carr & Parker* for appellant.

*Cummins & Wright* for appellee.

GIVEN, J.—This is the second appeal in this case. See 93 Iowa, 484. The questions now presented were not considered on the former appeal. Defendant's motion for a verdict was upon the ground that the evidence shows conclusively that the plaintiff was guilty of negligence contributing to the injury complained of, in that he did not exercise ordinary care in approaching and going upon the

defendant's track. Plaintiff contends that the evidence did not so show; that whether he was guilty of such negligence was a question for the jury; and that, therefore, the court erred in sustaining said motion and rendering said judgment. The rule in such cases is familiar and undisputed, and is well stated by defendant's counsel as follows: "That where the conduct of the person charged with negligence is such that there may fairly be different opinions with respect to it, where one man may honestly say it was in accord with ordinary prudence, and another may honestly say it was not, the question is one for the jury, and not for the court. The court is authorized to decide the question only when it is beyond the province of fair dispute." Guided by this rule, we are to say whether, under the evidence, the court erred in not submitting the question of plaintiff's negligence to the jury. In determining this, we must have in mind the care that the plaintiff was required to exercise, the circumstances under which he acted, and what he did, or omitted to do. It is conceded that he was bound to exercise ordinary care, that is the care that ordinarily careful, prudent persons would exercise under like circumstances. This rule is applicable to all such cases as this, and, in applying it, the courts have said that certain acts, when established, do, as a matter of law, constitute negligence. It has been often held that for one having control of the team he is driving to go upon a railway track, at a highway or street crossing, without looking and listening for trains, or, where there were obstructions to sight that rendered looking unavailable, without stopping to listen, was negligence. The law does not declare that a person about to go upon a railway crossing must look and listen, or stop and listen, at any particular time or place, but at the time and place that the exercise of ordinary

care requires. These well-recognized rules are not questioned, and we need not refer to any of the many authorities cited in the arguments.

II. There is no question but that it was the duty of the plaintiff to look and listen for trains before going upon this crossing, nor is it disputed that the evidence shows that he did look and listen. The contention is that he did not look at the time and place when and where the exercise of ordinary care required that he should have looked and listened. In determining this contention, we must look to the acts of the plaintiff, and the circumstances under which he acted. The circumstances were these:

The accident happened in the daytime, at the center of the crossing of east Eighth street. The numbered streets referred to run north and south, and are numbered from west to east. Shaw street, also referred to, runs east and west, and the defendant's track runs diagonally across that part of the city, its general direction being northeast and southwest. The track crosses Shaw street, west of Seventh, and Seventh, about three hundred and seventy-five feet west of the Eighth street crossing. The center of the Eighth street crossing is about one hundred and eighty feet north of the intersection of Shaw and Eighth streets. There were a dwelling house, outbuildings, and some trees on the west side of Eighth street, north of Shaw, between Shaw street and the track, that obstructed the view of the track to the west from Eighth street until within about sixty feet of the track. From this point the track could be seen as far west as Seventh street; and, as a traveler passed north, the view widened, so that at about forty feet south of the track it could be seen to the Des Moines river bridge about one thousand three hundred feet southwest of the Eighth street crossing. From the intersection of Shaw and Eighth streets the track

could be seen at Seventh, and for some distance west, but was hidden from view between Seventh and Eighth streets by said buildings and trees. On the day of the accident, the plaintiff, who was familiar with the locality, was driving north on Eighth street, in a one-horse covered delivery wagon, which was open on the sides and front from the seat forward, so that the cover did not obstruct his view. Plaintiff alone testifies as to what he did when approaching the crossing. He testifies that his horse was gentle and under control; that he was driving north on Eighth street, at a slow trot, a little faster than a walk, which speed he continued until struck by the engine. He says that, when crossing Shaw street, he listened and looked west, to see if any engine or train was approaching, and neither saw nor heard any; that, after passing said obstructions at a point about sixty feet south of the crossing, he looked west along the railroad almost to Seventh street, and saw nothing approaching; that he then looked east, and did not again look west, nor know of the approach of the engine from the west until it was about to the west sidewalk on Eighth street. He says he was listening for sounds of an approaching engine, and that he heard no signals. Other witnesses testified that no signals were given, and that the engine was backing at from twenty to thirty miles an hour. An ordinance of the city provides that locomotive engines shall not be run within the city limits at a greater rate of speed than six miles per hour, and that the bell shall be rung on approaching street crossings, and when any person or animal may be upon the track. While these requirements did not relieve the plaintiff from the exercise of ordinary care, nor from the duty of looking and listening, they, and the presumption that they would be observed, are proper to be considered in determining whether the plaintiff was negligent. He had no reason

to expect an engine or train to pass from .one direction more than from the other; hence it was his duty to look in both directions. He had a right to presume that no engine would be run at a greater speed that that prescribed in the ordinance, and that the bell would be rung at crossings as required. We have seen that, if plaintiff had looked west when about forty feet south of the crossing, he must surely have seen the approach of this engine, in time to have stopped and avoided the accident. The contention is that he was negligent in not again looking west after he passed the point sixty feet south of the track. We do not think it should be said, as a matter of law, that plaintiff was guilty of negligence in not again looking westward after he passed the point sixty feet south. He had looked westward at Shaw street, and from the sixty-foot point, and saw nothing approaching; was listening, and heard nothing. It was his duty to look east as well as west, and he did so. While we do not say that the plaintiff was not negligent, we do not think that it should be said, as a matter of law, that he was. Whether, in view of all the circumstances under which he acted, he was negligent, is a question about which we think men may honestly differ, and therefore one that should have been submitted to the jury. Counsel present calculations based upon estimates of time, the speed of the engine and horse, and measurements of distance, to show that the plaintiff was, or was not, negligent. Such estimates are not usually exactly correct, but mere approximations, and it should be left to the jury to determine what basis, if any, they may afford for a conclusion.

III. Plaintiff offered to prove that he knew of the provisions of said ordinance. This evidence was excluded upon defendant's objection that it was irrelevant, immaterial, and incompetent. We think it is

certainly relevant and material to know whether the plaintiff acted with or without a knowledge of those requirements. It could only be incompetent upon the theory that plaintiff was presumed to know what this ordinance required, but that presumption does not render incompetent evidence that confirms it as a fact.

For the reasons stated, we conclude that the judgment of the district court should be REVERSED.

LADD, J. (concurring).—I concur in all but the last paragraph of the foregoing opinion, but am unable to agree with the conclusion that a party may prove his knowledge of the provisions of an ordinance, which he is presumed to know without proof. Authorities are not required to sustain the proposition that every person is conclusively presumed to know the law, and that all persons within the limits of a city, or having property therein, are charged with full notice of the provisions of its ordinances. But see 17 Am. & Eng. Enc. Law, 254, and cases cited; *Gosselink v. Campbell,* 4 Iowa, 296. As a matter of public policy, the fact of such knowledge and notice is conclusively presumed, and requires no confirmation. If evidence is admissible tending to establish plaintiff's knowledge of the provisions of an ordinance, as bearing on the charge of contributory negligence, then it may also be received as tending to show want of such knowledge; and, if such an investigation is permissible in determining the issue as to plaintiff's negligence, then equally must it be passing on the issue as to the negligence of the engineer controlling the defendant's train. And all this for what purpose? Strengthening or weakening a fact that is conclusively presumed. Such inquiries could serve no useful purpose, and ought not to receive the sanction of this court.