EDWARD CUMMINGS, Appellant, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

**Contributory Negligence:** CROSSING ACCIDENT: *Jury question.*
Plaintiff approached a railroad crossing from the south, where he could see the track to the southeast for a distance of ten or fifteen rods from a point about seventy feet south of the cross-

ing; the view widening as the crossing was approached. so that when within fifty feet of it the track could be seen for a long distance to the southeast. To the northwest the view was somewhat obscured by buildings. When within eighty feet of the crossing, plaintiff checked his team to a walk, and listened and looked to the southeast until he could see the track for sixty or seventy rods. Not seeing or hearing any train, he looked northwest, and continued to do so until his team was within twenty feet of the track, when one of the horses became frightened. After getting it under control, he again looked southeast, saw the train within twenty rods of him. There being ditches on each side of the road, he did not attempt to turn out or draw back, but attempted to pass the crossing, and was struck by the train. *Held*, that the question whether plaintiff was guilty of contributory negligence was for the jury.

*Appeal from Dallas District Court.*—HON. JAMES D. GAMBLE, Judge.

FRIDAY, MAY 17, 1901.

ACTION to recover for injuries sustained by the plaintiff in consequence of the wagon in which he was driving being struck by one of the defendant's passenger trains at the crossing of Third street and the defendant's tracks in the city of Perry. At the conclusion of the testimony for the plaintiff the court sustained defendant's motion for a verdict, and rendered judgment accordingly. Plaintiff appeals. —*Reversed.*

*Shortley & Harpel* for appellant.

*Carroll Wright* and *White & Clark* for appellee.

GIVEN, C. J.—Defendant's motion for a verdict was upon the grounds that the uncontradicted evidence showed that plaintiff was guilty of contributory negligence in driving upon the crossing when and as he did, and that there is no evidence that any of the alleged acts of negligence on the part of the defendant contributed to the injury complained of. The negligence charged against the defendant is that

the train was run at a high, unnecessary and dangerous rate of speed, and that defendant's servants carelessly omitted to give any signal or warning on approaching said crossing. There is evidence tending to support these charges of negligence on the part of the defendant. The contention of defendant is that the motion was properly sustained on the ground of contributory negligence on the part of the plaintiff, and this is the only question we are called upon to consider.

Third street runs north and south, and the defendant's track crosses it from southeast to northwest. On the seventeenth day of August, 1898, about 1 o'clock in the day, the plaintiff, seated in his hayrack on his wagon, drawn by two horses, drove from the south onto said crossing; and when nearly over the crossing a passenger train from the southeast struck the hind part of his wagon, wrecking it and inflicting injuries upon the plaintiff. A person approaching the crossing as plaintiff did could see the track to the southeast for a distance of 10 to 15 rods from a point 70 or 80 feet south of the crossing, and the view widened as the crossing was approached, so that when within about 50 feet of it the track could be seen for a long distance to the southeast. To the northwest the view was somewhat obstructed by a toolhouse and corncribs, so that a full view was not had until within 15 or 20 feet of the crossing. Plaintiff, when within 70 or 80 feet of the crossing, checked his team to a walk, and, without stopping, listened and looked to the southeast until he could see the track for 60 or 70 rods. Not seeing or hearing any train in that direction, he looked northwest, and continued to look in that direction until his team was within about twenty feet of the track, when one of the horses became frightened; and after getting it under control, he again looked southeast, and saw the train coming within 20 rods of him. There being ditches on each side of the road, overgrown with weeds, he did not attempt to turn out or turn back, but urged his team forward, and attempted to pass the

crossing.   It was the duty of the plaintiff to exercise ordi-
nary care in approaching and going over said crossing.   As
trains may rightfully pass at any time, the exercise of ordi-
nary care requires that the traveler should look and listen
to see if a train is approaching; and if there are obstructions
to the view, so that he cannot know by looking, then it is his
duty to stop and listen.   *Moore v. Railroad Co.,* 102 Iowa,
596.   While negligence on the part of the defendant will not
excuse the plaintiff from exercising care on his part, he had
a right to assume that the defendant would not be negligent
on its part.   The contention is that plaintiff was negligent
in not again looking to the southeast sooner than he did.   It
is said that there was nothing to distract his attention and
that a single glance would have disclosed the approach of a
train from either direction; but the fact is that his view to
the northwest was obstructed somewhat, and that his atten-
tion was diverted at a very important moment by the fright-
ened horse.   It is true that the plaintiff did not at any time
stop to look and listen, but, as we have seen, it is not always
negligence not to stop.   It is certainly true that the plaintiff
did not drive on the crossing without exercising any care,
and whether he was exercising the care which the law re-
quires, we think, was a question for the jury.   We cannot
say, as a matter of law, that because he continued to look
northwest as he did, and did not sooner look southeast, he
was guilty of negligence.   As said in the *Case of Moore,*
*supra,* "it was his duty to look east as well as west," and he
did so.   While we do not say that plaintiff was not negligent,
we do not think it should be said, as a matter of law, that
he was.   Whether, in view of all the circumstances under
which he acted, he was negligent, is a question about which
we think men may honestly differ, and therefore one that
should have been submitted to the jury.—*Reversed.*