Maxwell Case, Appellee, v. The Chicago Great Western Railway Company, Appellant.

Railroads: CROSSING ACCIDENT: CONTRIBUTORY NEGLIGENCE. A traveler about to cross a railroad track must use reasonable precaution for his own safety, he can not drive heedlessly upon the track without looking or listening for approaching trains and hold the railway company liable for his injuries; but he has the right to assume that trains will be run at a lawful rate of speed and that the railroad company will comply with its duty when they are approaching a crossing; and he is not as a matter of law, required to stop his team before crossing, or to look and listen for an approaching train. But whether he was negligent in failing to do so in a given case is generally a question for the jury.

Same: EVIDENCE. In this action for injury to plaintiff and his team while attempting to cross a railroad track the evidence relating to the speed of the train, the giving of signals and plaintiff's precaution for his own safety is reviewed, and is held to present a question of contributory negligence for determination by the jury.

Same: CONTRIBUTORY NEGLIGENCE: INSTRUCTION. Whether plaintiff might have seen the approaching train at the time and place he testified to having looked and listened therefor was, under the evidence, a question of fact, and the defendant was not entitled to an instruction that if he could have seen the train at that time and place he must be held to have seen it, or that he did not look and listen for it.

Same: INSTRUCTION. A requested instruction which singles out certain evidence without regard to other evidence bearing upon the question, or which is purely argumentative, or which assumes as a fact a question concerning which there is a dispute in the evidence, should not be given.

Same. An instruction that it was plaintiff's duty when he arrived at a point from which an approaching train could be seen to exercise precaution by looking for its approach, and if the train which injured him was in plain sight from the point where it was his duty to look, and the circumstances suggested a reasonable probability of danger, an attempt to cross was negligence, was not

objectionable because of the use of the words "plain sight," as the same should be construed to mean within the range of plaintiff's vision.

*Appeal from Black Hawk District Court.*—HON. CHAS. E. RANSIER, Judge.

THURSDAY, JUNE 16, 1910.

ACTION at law to recover damages for injuries received by plaintiff due to his wagon being struck by one of defendant's trains at a street crossing in the city of Waterloo. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Carr, Carr & Evans* and *J. E. Williams,* for appellant.

*C. W. Mullan and B. F. Swisher,* for appellee.

DEEMER, C. J.—While driving a covered milk wagon along what is known as Franklin Street in the city of Waterloo, plaintiff was struck by one of defendant's trains at the crossing of said street, and received the injuries of which he complains. There was no flagman at the crossing and plaintiff claims that the bell on the engine was not rung or the whistle sounded or any other warning given of the approach of the train. He further claims that the train was running at a high and dangerous rate of speed, to wit, from fifteen to twenty miles an hour, which speed was unlawful under the ordinances of the city, which fixed the rate within the city at eight miles per hour; that he both looked and listened for the approach of the train and did not see or hear it, and that notwithstanding due care on his part he was struck and injured. There was a conflict in the testimony upon many of the material points, but the jury returned the following answers to special interrogatories submitted, which answers in view of the

conflict in the testimony must be regarded as conclusive. These answers were as follows: "(1) Was the engine bell ringing as the train approached Franklin Street? Answer: No. (2) Was the whistle sounded for the station? Ans.: Yes. (3) Was the whistle sounded for the street crossing between the viaduct over the Illinois Central Railway and Barclay Street? Ans.: Yes. (4) At what rate of speed was the train moving at the Walnut Street crossing? Ans.: Fifteen to twenty miles." That these answers show negligence upon the part of the defendant is practically conceded; but it is strenuously argued in many different ways that under the undisputed testimony as applied to familiar rules of law plaintiff was guilty of contributory negligence, and that there should have been a verdict for the defendant. This contention calls for a brief recital of the testimony from plaintiff's standpoint.

Franklin Street is one of the important streets of the city. It is near the business portion, is paved, and crosses defendant's tracks between Sixth and Seventh Streets. Franklin Street runs east and west, and defendant's track runs a little east of north from its junction with Franklin Street. Upon the block immediately north of Franklin Street and west of Seventh, there is a lumber shed and office, a lumber yard and coal shed and three dwellings, all obstructing the view of a train coming from the north on defendant's tracks. It is impossible, as we understand it, to see a train coming from the north in passing from the east side of Seventh Street until one gets within from fifteen to twenty feet of the east rail of defendant's main line track; but it is conceded that at a point seventeen feet from this east rail it is possible to see a train coming from the north a distance of four hundred and seventy-seven feet. Just prior to receiving his injuries plaintiff was driving westerly along Franklin Street toward the railway tracks, his team moving at a rapid walk. When he approached the fill upon which the track was

laid, which is shown to be between four and five feet above
the grade of the street at the crossing, he slowed his team
down, and it was walking slowly as he approached the cross-
ing. As he came to the place where he had an unobstructed
view of the track he, according to his testimony, which has
some corroboration, pulled his team to a stop or practically
to a standstill, looked northeasterly and along the track
and as far as he could see, and listened for the approach of
a train. Seeing or hearing nothing he looked down the
track in a southwesterly direction for trains which might
be coming from the south. None being in sight or hearing
in that direction, he proceeded to cross the track, and just
as his horses had gotten over the tracks and while his
wagon was upon them he heard a train coming from the
north, cast his eyes in that direction, and discovered the
rapidly moving train within one hundred and fifty feet
of him. He then attempted to back his team off the track,
but was unable to do so, and the team and wagon were both
struck by the train, one horse killed, the wagon badly
broken, and plaintiff thrown out, struck by the locomotive,
and badly injured. The Walnut Street crossing referred
to by the jury was three hundred feet north of the one at
Franklin Street. Two boys were riding on the wagon which
plaintiff was driving, one upon the right or north side,
and the other upon the left or south side as it approached
the crossing. These boys were standing upon steps near
the middle of the wagon, and the boy on the right side
of the wagon, testified that as plaintiff approached the
railway crossing he stopped the team; that he (the boy)
heard no locomotive whistle and that no bell was rung, and
that he did not see the train until just before it struck
the wagon, when he jumped and escaped injury. Defend-
ants say, however, there is no testimony that plaintiff
slackened the speed of, or stopped his team before reaching
the crossing; no testimony that he looked to the northward
for the approach of a train, or, rather, that although plain-

tiff testified that he did look and saw no train, his testimony should be disregarded, for that if he did look at the point he said he did he could not help seeing the train, and for these reasons that plaintiff was guilty of contributory negligence as a matter of law and should not recover.

In the first place it is not true, as a matter of law, that one must stop his team before crossing a railway track. Whether or not he should do so in any given case is a question of fact for the jury and not of law for the court. *Selensky v. R. R. Co.*, 120 Iowa, 113; *Lorenz v. R. R. Co.* 115 Iowa, 377; *Willfong v. R. R.*, 116 Iowa, 548, and cases cited. But it is said that under the testimony plaintiff either did not look for the approaching train, or if he looked he must have seen it in time to have avoided the injury, and in either event he was guilty of contributory negligence. Generally speaking the question of contributory negligence in such cases is for the jury. *Cummings v. R. R.*, 114 Iowa, 85; *Schulte v. R. R.*, 114 Iowa, 89; *Meyer v. R. R.*, 134 Iowa, 722, and cases cited. Of course one may not heedlessly drive upon railway tracks at street crossings without looking or listening for approaching trains and hold the railway company liable, no matter how negligent it may have been. One about to cross a railway track must take reasonable precautions for his own safety. He must sometimes stop his team and look and listen, and in any event must both look and listen before subjecting himself to the dangers from passing trains. *Payne v. R. R.*, 108 Iowa, 188; *Moore v. R. R.*, 102 Iowa, 596; *Cummings v. R. R., supra; Starry v. R. R.*, 51 Iowa, 419. But one about to cross a railway track has the right to assume that trains will not be run at an unlawful rate of speed; that the usual and customary warnings will be given; and that the railway company will comply with its duty in approaching street crossings. *Correll v. R. R.*, 38 Iowa, 120; *Cummings v. R. R., supra; Moore v. R. R., supra.*

1. RAILROADS: crossing accident: contributory negligence.

One about to cross a railway track is not bound, as a matter of law, to look or listen for a train at any given point. Whether or not he looked and listened at a point

2. SAME:
evidence.

where he might have seen the train and avoided the injury in the use of ordinary care and prudence is generally a question for the jury, and the instant case was submitted to the jury on that theory. Without absolutely disregarding the testimony, we must say that the jury were justified in finding that plaintiff either slacked the speed of his horses or stopped them; that at a point seventeen feet from the track he looked in a northeasterly direction for an approaching train, saw none, although he had an unobstructed view of the track for something like four hundred and seventy-seven feet; that he then looked to the southward, as was his duty, for trains coming from that direction, his team in the meantime walking slowly toward the track, and that neither he (plaintiff) nor the boy who was on the right side of the wagon riding with him heard or saw the approaching train until it was within one hundred and fifty feet of them. A jury was justified in finding that the train which struck the plaintiff was running at from fifteen to twenty miles per hour; that it passed over at least three hundred and twenty-seven feet while plaintiff's team covered the seventeen feet between the place where plaintiff says he stopped and the east rail of the track, and the distance from the east rail to the other side of the track. It took some time for plaintiff to look to the south and assure himself there was no danger from that direction. So it is apparent that because of the higher rate of the speed of the train plaintiff was placed in a position of peril which would not have existed had the train been run at eight miles per hour or had the usual signals been given of the approach of the train. Appellant's counsel have made what they call a mathematical demonstration of plaintiff's contributory negligence. Such figures are not always

reliable because witnesses can not state with accuracy distances, rates of speed, etc.   Aside from this, however, the figures furnished by appellant's counsel are based upon testimony which is the subject of dispute.   Moreover, appellant's counsel in making their figures do not allow anything for the time required of plaintiff in looking for a train from the south, nor do they give any regard to the fact that plaintiff's team was upon or just over the track when plaintiff saw the engine.   Taking these facts into account it is manifest that the train was not in sight if running at the rate of twenty miles per hour when plaintiff looked toward the north.   The question of contributory negligence was manifestly for the jury.

II.   Appellant asked an instruction reading as follows: "If you find that the defendant's train was at any place within four hundred and seventy-seven feet of the place on Franklin Street which is marked 'A' on plat in evidence, and which is seventeen feet from the southeasterly rail of the main track, at the time plaintiff testifies he looked in a northeasterly direction to see if a train was approaching, then you should disregard his testimony that he looked for an approaching train at the time and place he testifies he slowed down his team and looked and listened to ascertain if a train was approaching."   Such a thought may well be made in argument to a jury. but it will hardly do to announce as a rule of law that if one could have seen a train at a given time and place he must be held to have seen it, or that he did not look and listen for it.   This may, under some circumstances and perhaps under most, be regarded as a logical proposition, but it is not a legal one.   Whether or not a person did look and listen, and whether or not he saw or should have seen an approaching train are questions of fact for a jury and not of law for the court.   Neither of the cases cited and relied upon by appellant announces

3. SAME: contributory negligence: instruction.

any such rule of law as is set forth in the requested instruction.

Moreover it singles out certain testimony bearing upon plaintiff's case without regard to the other evidence in the case, and is purely argumentative in character. It was for the jury to say whether or not plaintiff looked for the train, at what place he looked, and whether or not he saw it before he was struck. Again, even if plaintiff saw the train four hundred and seventy-seven feet away, and it had been running at a proper rate of speed, he (plaintiff) might safely have crossed ahead of it and his act in attempting to do so would not necessarily constitute contributory negligence. Another reason for not giving the instruction is that it stated that plaintiff looked at a point seventeen feet from the east rail of the track. This was a matter in dispute. Some of the witnesses testified it was twenty feet from the rail where plaintiff looked. Of the other instructions asked by defendant, those which announced correct rules of law were given by the court in its charge, and there was no error in refusing them.

III. A part of the eighth instruction given by the trial court reads as follows: "It was the duty of the plaintiff to take reasonable precautions to ascertain if a train was coming which might endanger him at the crossing, and to make reasonable use of his senses by listening for signals or the noise of the train when within a reasonable distance from the crossing, and when he arrived at a point from which a train could be seen, by looking in the direction which a train might come; and, if the train in question was at the time in plain sight or hearing from the point where it was the plaintiff's duty to so look or to so listen for trains, and so circumstanced as to suggest reasonable probability of danger, an attempt to cross the track would be negligence which would defeat his recovery of damages for injury thus received."

The use of the words "plain sight" are criticised.

They have been used many times in the opinions of this court in referring to the same subject as in *McLeod v. R. R. Co.*, 125 Iowa, 273, and in our opinion are not objectionable. "Plain sight" means nothing more than that the train was within the range of plaintiff's vision, had he been looking in that direction. If the train was obstructed or could not readily be seen, then it was a question as to whether or not plaintiff was bound to see it. If in plain sight, then, under the instruction, plaintiff was bound to see it and to govern himself accordingly. In order to show with what care the case was submitted we here quote the next paragraph of the instruction complained of: "If obstructions to his view when approaching the track, or if interference with his hearing while his team was in motion, or other circumstances, indicated that it was essential for him to stop his team and wagon in order to overcome the noises within his control, and to better see and hear whether it was safe for him to cross, it was his duty to stop, and if the neglect on his part to perform any of such duties to look, or listen, as so required of him, contributed to cause the accident, it would preclude any recovery by the plaintiff even if you should find that the defendant was also negligent, or failed to give signals, maintain a flagman, or was running at an excessive or unlawful speed."

The case was fairly submitted to the jury, and the verdict has support in the testimony, and as we discover no prejudicial error the judgment must be, and it is, *affirmed*.