ANNA M. WILSON, Administratrix, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RY. CO., Appellant.

**Trial:** CONTINUANCE: DISCRETION. Where counsel knew of the assignment of the case for trial several days before he made any effort to procure the attendance of a witness or her testimony, and was unable to procure the attendance of the witness in time to testify, it was within the discretion of the court to refuse a continuance of the case.

**Same:** SURPRISE. In an action for a death at a railway crossing, an amendment to the petition which simply described more specifically the nature of the crossing at which deceased was killed, was not cause for continuance on the ground of surprise.

**Witnesses:** CROSS-EXAMINATION: IMPEACHMENT. A party who developes collateral and independent matters on cross-examination is bound thereby, and cannot impeach the witness by showing that such collateral matters were untrue.

**Railroads:** CROSSINGS: NEGLIGENCE: RATE OF SPEED. A high rate of speed of a moving train in the open country is not of necessity negligence as to one about to cross the track; but may be considered on the question of negligence where the crossing is peculiarly dangerous to travelers on the highway.

**Same:** NEGLIGENCE: CROSSING SIGNALS. The common law obligation of a railway company to give such appropriate warning of the approach of a train as the danger of the place demands, is not abrogated by the statute requiring certain crossing signals; so that where the statutory crossing signals are insufficient warning to travelers upon the public highway the railway company is required to give additional warning,

**Same.** While it is the duty of a traveler upon the highway when approaching a railway crossing to look and listen for trains, still he may assume that the railway company will give the usual crossing signals, and will use the care required of it when approaching a dangerous crossing.

**Same:** NEGLIGENCE: DUTY OF TRAVELER. Upon approaching an obstructed railway crossing, or where the view of the crossing is obstructed, a traveler upon the highway must exercise the caution of a reasonably prudent person under like circumstances; and if he can hear an approaching train, even though no crossing signals are given, he should wait until the train passes, unless as a reasonably prudent person he is justified in believing that he can cross ahead of the train in safety.

**Same:** EVIDENCE: INSTINCT OF SELF-PRESERVATION: PRESUMPTION. In the absence of eyewitnesses to an accident resulting in death, it will be presumed from the instinct of self-preservation that the deceased was in the exercise of ordinary care for his own safety at the time of the accident; but this presumption is not conclusive and may be overcome by proof of the surrounding circumstances.

**Same:** NEGLIGENCE: EVIDENCE: BURDEN OF PROOF. The plaintiff in a personal injury action has the burden of showing that decedent was not guilty of negligence contributing to his own injury; but in the absence of evidence from eyewitnesses the presumption arising from the instinct of self-preservation that decedent was in the exercise of reasonable care for his own safety will sustain this burden, unless from the physical facts and natural features of the locality it is apparent that deceased, had he exercised the degree of care required of him, could have avoided the accident. In this action for the death of one at a railway crossing the evidence is held to require submission of the question, whether deceased was in the exercise of reasonable care at the time of the accident.

*Appeal from Story District Court.*—HON. C. G. LEE, Judge.

SATURDAY, JUNE 7, 1913.

ACTION at law to recover damages for the death of Earl P. Wilson, deceased, due to his being struck by a train on defendant's right of way at a highway crossing in Story county,

Iowa.   Defendant interposed a general denial, and on the issues joined the case went to trial to a jury, resulting in a verdict and judgment for plaintiff in the sum of $2,000. Defendant appeals.—*Affirmed.*

*Cook, Hughes & Sutherland,* and *E. H. Addison,* for appellant.

*I. W. Douglass,* and *Edward M. McCall,* for appellee.

DEEMER, J.—I.   Deceased was a young unmarried man about nineteen years of age at the time of his demise.   He was killed by a train operated on defendant's line of railway at a highway crossing in Story county, Iowa, at about 3 o'clock a. m. July 24th, 1910.   This crossing was about two miles and one-fourth, east of the town of Collins, in said county. Deceased had been working on a farm about two miles south of the crossing just prior to the collision.   No one saw the accident, but deceased was driving a single horse to a light buggy, and was traveling eastward on a highway, which ran east and west.   The train was also running a little north of east on the main line of defendant's road from Omaha to Chicago.   The railway at this point runs nearly parallel with the highway; and the train, which struck the deceased, was an excursion one from Omaha.   Something like eighty to one hundred rods west of this crossing, on a road running north and south, there is an overhead bridge spanning the right of way, the railway track running under the bridge.

The following is a rough plat of the situation, which is not reduced to a scale, but shows, in a general way, the highway crossings and line of railway track, with a notation of the point of accident:

The alleged negligence upon which the case was submitted was that: "(1) Defendant was negligent in running its train at the time complained of at a high and excessive rate of speed. (2) Defendant was negligent in failing to signal its approach to the crossing by blowing the whistle. (3) Defendant was negligent in failing to signal its approach to the crossing by ringing the bell."

As already stated, no one saw the accident, and the only direct testimony, with reference thereto, came from the engineer and fireman.

The engineer said:

I remember the night Earl Wilson was struck by the train. I was engineer; the train came through Collins, going east, at about 3:10 in the morning; it was an excursion train from Omaha as I remember. When we went over the crossing, I heard a crushing noise on the left side of the engine under the cab, and decided we must have struck something on the crossing, and so stopped. The boiler beam and cylinder and main reservoir under the cab and the steam pipe on the under side of the tank showed marks of being struck. The boiler beam stuck out ten inches beyond the rail. There were marks on the north end of that, and marks on the cylinder on the left-hand side of the engine. The body was lying near the signpost in the highway. I noticed the horse; its right

side was ripped open, and it was about fifty feet east of the boy's body.

And the fireman said:

The accident occurred at about 3:10 in the morning. As we passed over the crossing I heard the engine strike something, and we stopped. I examined the engine to see whether there were any marks of how the accident occurred. I discovered marks upon the pilot beam and main reservoir, and under the cab window. As near as I can state, the marks looked as if something had struck against the post, and had been knocked up against the window, and made some scratches on the pane. It struck against the cab under the window, and there were also marks on the cylinder on the left side. His body was lying some ten feet from the sign-post, still in the highway, and still in the buggy.

The headlight of the engine was burning, and it is a little strange, we may here observe parenthetically if, as defendant contends, the train was in plain sight of the deceased for more than six hundred and sixty feet, while he was on the highway, going east and west, that neither the engineer nor the fireman saw the deceased. On account of a curve made in the track, if there were no obstructions, the headlight of the engine must have swung around, if we are to adopt defendant's version of the affair, so that it covered the deceased and his horse for a good part of this six hundred and sixty feet, and yet neither of the men in the engine saw the deceased. There is a dispute in the testimony as to whether or not the whistle was blown or the bell rung for the crossing, and these were questions for the jury.

There was also testimony from which a jury may have found that the train was running at a speed of from fifty to fifty-five miles per hour just prior to the collision. Appellant strenuously contends that under the record deceased was guilty of contributory negligence as a matter of law, and fur-

ther assigns error on the instructions given and refused, and also upon certain rulings of the trial court in the rejection of·testimony, and upon a motion for a continuance or postponement of the case.

II.   The motion for continuance or postponement came at the close of defendant's testimony, at about·

1. TRIAL: continuance: discretion.

10 a. m. of the 19th day of January, 1912. Defendant had rested its case, save for one witness, and then made the following motion:

Upon the convening of the court on the morning of the 19th of January for the third day of the trial of this case the defendant calls the witness Charles Kahen for further cross-examination, and after the close of his testimony the defendant states that it has no other witness except Cora Cline; that said.Cora Cline lives in Kansas City, Mo., and that her residence was not known to defendant until noon of the 18th day of January, 1912; that on Monday, the 15th day of January, and prior to the day the case was called for trial, and before the two jury cases which were tried before this case was reached for trial, the defendant began a diligent search to find the whereabouts of said witness; that the defendant telephoned to the father of said witness at Maxwell, Iowa, and was advised that said person was living at Des Moines, Iowa; that after investigation and search in Des Moines defendant learned that the said person lived in Kansas City, Mo., and at once communicated with parties in Kansas City to ascertain her whereabouts; that since this accident occurred in this case said witness had been married, and her present name was not known to defendant; that defendant at about noon January 18th located said person and secured her consent to come to Nevada, Iowa, and that she, as affiant is informed and believes, is now on her way to Nevada, and that she will reach Des Moines at about 10 or 10:20 o'clock, and will be able to leave Des Moines on the Northwestern at about 11 o'clock and reach Ames, Iowa, in time to be brought over from Ames with a team and be in the courtroom by half past 1 o'clock this afternoon; that a telephone message from Des Moines from T. F. Glynn and J. N. Hayes to affiant herein states

that he has just been talking to said witnesses, who are at a station en route from Kansas City to Des Moines, and that she is coming to Des Moines on the train which will reach Des Moines at about 10 or 10:20; that the defendant has used all the means that it has had and all the diligence that it could exercise in ascertaining the whereabouts of said witness and in getting her to attend the trial of this case. Affiant further says that if said witness was present in court she would testify that she was acquainted with Earl Wilson, and had been keeping company with him for about one year prior to the date of the accident and his death; that she had frequently driven over the highway and crossing in controversy in this case, and upon which the said Earl Wilson was killed, in company with him, and that the night of his death she had gone over the said crossing with him at about half past 8 or 9 o'clock, going over said road and over said crossing; that said Earl Wilson took her to her home some two or two and one-half miles distant from the said crossing, and that he left her at about 2 o'clock a. m. on the morning of July 24th; that when he left her he had a buggy, and was driving back with one horse attached to same, and that it was a horse that had been driven by him while she was in his company on a number of occasions, and that the horse had appeared to be a gentle and trustworthy horse, and that the said Earl Wilson had the appearance of being asleep at the time he left her, and stated that he was sleepy and intended to sleep on his way home. Affiant further says that he knows of no other persons by whom said fact can be proven, and that he believes the same to be true. [Signed] John N. Hughes. [Duly sworn to.] Upon the facts stated in the above and foregoing affidavit which is made of record in this case, the defendant asks the court to grant a continuance of this case until 1:30 o'clock this afternoon in order to produce said witness.

Thereupon the following record was made:

Mr. McCall: All that you know about it is that Mr. Glynn telephoned to you that he had telephoned to her down the road somewheres, and that is what she says, and he says that is what she says she will testify to.

Mr. Hughes: What I know about it is this: That he called up from Kansas City at noon yesterday, and I answered the phone. Mr. Glynn's brother said to me that they had located the woman, naming her, and that she would come up here if we had time to get her up here for the trial. I told Mr. Glynn to look up the time tables, and see when he could get here. He looked it up, and said that he thought he could get here by 9 o'clock or by 8:30 this morning. So I sent him on down to Des Moines to meet her there, so that there would be no question about her making any mistake as to the taking of the train. Just as the court convened I got a telephone message from him at a station just below Des Moines, and that she was on the way on the Burlington, and that the Burlington train should be in—I am not certain whether he said 10:10 or 10:20, but in time to take the Northwestern.

The Court: You asked me yesterday to wait until this morning to finish your case.

Mr. Hughes: Yes; I did then, but really we have not finished our case.

The Court: We could have finished with your testimony last evening.

Mr. Hughes: I don't think we could have. I asked you last night to adjourn before cross-examination; and, if I wanted to ask this witness some other questions, I could do so this morning.

The Court: You were aware of the fact that the trains have been running very irregularly the last week.

Mr. Hughes: I ought to be; yes.

The Court: And this woman to reach here would have to make two connections—would have to make a connection at Des Moines and another at Ames.

Mr. Hughes: No, sir; she would drive over from Ames.

The Court: She might be driven eight miles—if she reached Ames, she might be driven over.

Mr. Hughes: Yes.

The Court: When did you start to look for her?

Mr. Hughes: Monday. I will tell you I started—I got word of the assignment, and that was Thursday of last week.

The Court: There has been no effort to find her before the case was assigned?

Mr. Hughes: Not before the case was assigned; no, sir.

The Court: If the witness comes here before the testi-

mony is closed, we will hear her, but we will go ahead with plaintiff's rebuttal.

Mr. Hughes:  Of course, that is equivalent to denying the request, and we except to the ruling of the court.

I suppose that is all then, subject to that motion there?

The Court:  Defendant rests.  Is there any rebuttal.

Mr. McCall:  We rest.

The Court:  Defendant's motion for postponement is denied and defendant excepts.

Thereupon arguments of counsel were heard.

The rulings and orders of the court, made upon this motion, are assigned as error.

These orders were largely discretionary in character, and we see no abuse of discretion here.  The trial court might very well have denied the motion because of the negligence of defendant and its counsel in trying to procure the witness or her testimony.  Counsel knew of the assignment of the case on Thursday, but did nothing toward procuring the witness or her testimony until the following Monday and the court was not required to wait an indefinite time for the witness to appear.

III.  Before the case went to trial, plaintiff filed an amendment to her petition, and defendant moved for a continuance, on the ground of surprise.  This motion was also

2. SAME: surprise. overruled, and in this there was no error. The amendment did nothing more than to more specifically state the nature of the crossing at which deceased was killed, and it introduced no new cause of action. This motion was properly overruled.

IV.  Complaint is made of rulings on certain testimony offered by defendant in contradiction of the evidence of one Swallwell, a witness for the plaintiff.  The defendant was

3. WITNESSES: cross-examination: impeachment. denied the right to show that two men named by the witness Swallwell were not in Collins at a time and place fixed by him.  As the matter testified to by the witness Swallwell was brought

out on cross-examination and related to a collateral and independent matter, defendant was bound by the statements made, and could not contradict or impeach the witness by showing that these collateral matters were untrue. *Clark v. Reininger*, 66 Iowa, 507; *Eikenberry v. Edwards*, 67 Iowa, 14; *Swanson v. French*, 92 Iowa, 695.

V. Instructions 4, 4½, and 5, given by the trial court, read as follows:

(4) A railroad company having the right to operate its trains over its tracks does not become liable for every accident that may occur thereon. It can never be held liable unless its employees are guilty of some act of negligence. The plaintiff in this case makes certain specific charges of negligence against the defendant, and you are told that she must as an element of her right to recover establish at least one of said charges before a recovery can be had by her. The charges of negligence made by the plaintiff, briefly stated, are as follows: (1) Defendant was negligent in running its trains at the time complained of at a high and excessive rate of speed. (2) Defendant was negligent in failing to signal its approach to the crossing by blowing the whistle. (3) Defendant was negligent in failing to signal its approach to the crossing by ringing the bell. It is a requirement of statute that a bell and a steam whistle must be placed on each locomotive used and operated on any railway, which whistle shall be sounded at least sixty rods before the road crossing is reached, and after the sounding of the whistle the bell shall be rung continuously until the crossing is passed. It does not follow that the defendant would be free from negligence if the whistle was sounded more than sixty rods from such crossing and the bell rung continuously from such point until the crossing was passed. The statute requires such precaution at country highway crossings in all cases, but if, by reason of curves, cuts, embankments, or of obstructions the peril to travelers is increased so that such signals are not sufficient to warn them in the exercise of ordinary care in order that they may avoid danger, then the duty is imposed upon the railroad company of giving additional signals or reducing the speed of its train so that travelers by the exercise of ordinary care may avoid injury.

(4½) With reference to the rate of speed at which a train

travels you are told that it cannot be said as a matter of law that any particular rate of speed is excessive. Ordinarily a railroad company has the right to operate its trains as fast as it desires to do so, but in operating them at a high rate of speed they are required to give such signals as will enable a person using the highway to avoid collision by the exercise of ordinary care, and if the character of the crossing is such that when the signals given are considered, one attempting to use the crossing cannot do so safely by the use of ordinary care and avoid collision with a train going at the speed adopted, then such speed for that point would be excessive.

(5) In this case, if you find from a preponderance of the evidence that the defendant's employees failed to sound the whistle more than sixty rods before reaching the crossing where the plaintiff's intestate was killed, or that they failed to ring the bell from a point sixty rods before such crossing was reached until the same was passed, then you will find that defendants were negligent. Or if you find from a preponderance of the evidence that the location of said track with reference to said highway, the cuts and obstructions were such that in the exercise of ordinary care, as reasonably prudent persons, defendant's employees should have blown the whistle on approaching said crossing at other points than at the points above mentioned in order to enable travelers upon said highway to cross the same in safety and they failed to do so, you will find that the defendant was negligent. Or if you find by a preponderance of the evidence that considering the location of said highway, the obstructions to view, if any, and the signals given of the approach of said train, that the speed of the train was so great that persons in the exercise of ordinary care would be unable to cross said crossing in safety, then you will find that the defendant was negligent. But if you do not find by a preponderance of the evidence that the defendant failed to whistle or ring the bell as required by statute, or that they failed to blow the whistle or ring the bell as the same would have been blown or rung by the ordinarily prudent man under the same circumstances, or you do not find that, considering the character of the crossing and the signals given, the speed of the train was unreasonable, then you cannot find the defendant negligent and it will not be liable in this case.

Each of these is complained of, and it is strenuously

insisted that there was no testimony to justify these instructions, and that in any event there was error in submitting

**4. RAILROADS: crossings: negligence: rate of speed.**   the question of the speed of the engine in such a manner as that the jury might have found negligence therein.   Again, it is argued that the fourth and sixth instructions, authorizing the jury to find negligence from the failure of defendant's employees to give other than the statutory signals for the crossing, were erroneous.   In recent cases we have said the following with reference to these matters:

As has often been said, no rate of speed in a train moving in the open country is in itself negligence as to a person upon a crossing, but it sometimes happens, when considered with reference to the circumstances of the particular place, that the rate of speed may be an important factor in determining whether due care has been exercised. *Kinyon v. Railroad,* 118 Iowa, 349.   Whether, in view of the location of this particular crossing at the end of a deep cut, the obstructions, if any, to the view of the approaching traveler, the failure to sound signals of warning, and other attendant circumstances, the rate of speed in this instance had any tendency to indicate a want of reasonable care on part of the defendant was a question of fact and not of law. *Hartman v. Railroad Co.,* 132 Iowa, 582.

Again, in *Gray v. Railroad Co.,* 143 Iowa, 268, we said:

The crossing is concededly a peculiarly dangerous one for persons traveling the highway from the north.   For a considerable distance one approaching it from that direction obtains no view of the railway except at a few openings where small sections of the track are disclosed, and not until he reaches within a few feet of the north rail is he able to get a clear view of an approaching southbound train.   While the general rule that no rate of speed by a railway train in the open country is negligence *per se,* it is no less true that a railway company running its trains across streets and highways must operate them with due regard to the rights and safety of the public at points where these avenues of travel and com-

merce intersect.   See *Kinyon v. Railroad Co.*, 118 Iowa, 358, and other cases there cited.   This duty is emphasized where the crossing is made in surroundings which obscure the view or are of such character as to render the ordinary signals less noticeable or less effective.   The evidence as to the signals given in the instant case is contradictory.   The preponderance of numbers among the witnesses is to the effect that the whistle was sounded a thousand feet or more from the crossing, and that the bell was rung continuously.   Others who were favorably situated say that they did not hear the signals, and there is some testimony that the only whistle sounded was when the engine was only about three hundred feet from the crossing. The rate of the train's speed was evidently very high.   The fireman whose situation was on the north side of the engine was engaged in 'cleaning the deck' and was keeping no lookout.   These, to say nothing of other circumstances, are sufficient to uphold a finding that the company was chargeable with negligence.

And with reference to the giving of signals we said in *Kinyon v. Railroad Co.*, 118 Iowa, 349:

The tenor and effect of the instructions given were to impress upon the jury the thought that, if the whistle of the engine was sounded sixty rods from the crossing, the defendant had discharged its whole duty.   This idea was expressly or impliedly repeated in various forms throughout the charge.   There are a few cases which tend to sustain the doctrine announced by the learned trial court in this respect (*Beisiegel v. Railroad Co.*, 40 N. Y. 9; *Grippin v. Same*, 40 N. Y. 34); but, as we shall endeavor to show, it is not in accordance with the weight of authority.   Even when there is no statutory regulation, a railway company may be chargeable with negligence for failing to give reasonable warning before running its train over a public crossing.   Shearman & Redfield, Negligence, § 484; *Artz v. Railroad Co.*, 34 Iowa, 153; *Railroad Co. v. Ives*, 144 U. S. 408 (12 Sup. Ct. 679, 36 L. Ed. 485); *Tolman v. Railroad Co.*, 98 N. Y. 198 (50 Am. Rep. 649); *Loucks v. Railroad Co.*, 31 Minn. 526, (18 N. W. 651); *Guggenheim v. Railroad Co,.* 57 Mich. 488, (24 N. W. 827); *Thompson v. Railroad Co.*, 110 N. Y. 636, (17 N. E. 690); *Harty v. Railroad Co.*, 42 N. Y.

5. SAME: negligence: crossing signals.

468.   And in such cases the place where and the distance at which reasonable care requires the warning to be given must of necessity depend upon circumstances.   It is a matter of common observation that railway crossings are not all equally dangerous; varying, as they do, from the intersection of straight tracks upon the open prairie, with unobstructed view for miles in every direction, to the crossing of sharply curved tracks in deep cuts, where an extended view is impossible. It is obvious that taking one extreme it is hardly possible for a traveler upon the highway to collide with a passing train without gross negligence upon his own part, while in the other case he may quite readily be run down and injured when in the exercise of all reasonable care for his own safety.   The general common-law rule that care, to be reasonable, must be proportioned to the danger to be avoided, applies here, as in other cases of alleged negligence; and that the rule affects, not only the traveler who ventures upon the crossing, but the railway company which operates its trains over the track. Turning to the statute, we find the provision to be that the whistle of the engine shall be sounded 'at least sixty rods before a crossing is reached.'   The effect of this is to indicate the kind of warning which must be given, and the minimum limit within which the duty must be performed, but does not abrogate the common-law obligation which would require a warning at a greater distance if by reason of the speed of the train, or the peculiar dangers of the crossing, some earlier signal is dictated by reasonable caution.

See, also, to the same effect *Hart v. Railroad Co.*, 56 Iowa, 170.

VI.   The seventh instruction is also complained of.   It reads as follows:

(7)  If you find that the defendant was guilty of one or more of the acts of negligence charged as specified in these instructions, and that such negligence was the cause of the injury of which plaintiff complains, you will next inquire whether or not plaintiff's intestate was guilty of contributory negligence.   It was the duty of the said Earl P. Wilson in approaching said crossing to look and listen for approaching trains.   The care required of him in this respect was the care which would be exercised by the ordinarily prudent person

under such circumstances, having in mind the character of
the crossing as known to him, the mode by which he was trav-
eling, the difficulty, if any, to see and hear the approaching
train, the duty imposed upon defendant to give signals upon
approaching the crossing; his position and condition to hear
and see the approaching trains and all other matters shown
in evidence which should be considered by the ordinarily
prudent person under such circumstances. And if, under all
the circumstances, you believe he did exercise ordinary care,
then he was not guilty of negligence. But, if from all the cir-
cumstances you do not find that he did exercise ordinary care,
then he was negligent. And, if such negligence in any man-
ner contributed to said injury, then plaintiff cannot recover in
this case.

This paragraph has ample support in the cases. See *Case
v. Railroad Co.*, 147 Iowa, 747; *Cummings v. Railroad Co.*,
114 Iowa, 88. One approaching a railway crossing undoubt-

**6. SAME.**

edly has the right to assume that the railway
company will give the usual and customary
warnings, and that it will exercise the care required of it in
approaching such dangerous places. Many other cases might
be cited and we need but add: *Moore v. Railroad Co.*, 102
Iowa, 595.

VII.   The ninth instruction was in this language:

If the track at the point of the crossing or from the point
of the approach thereto is obstructed, one attempting to cross
the same should exercise such caution as would be used by the

**7. SAME: negli-
gence: duty
of traveler.**

reasonably prudent person under like circum-
stances to avoid collision with a passing train
by looking and listening at a point distant
from the crossing from which he would, in the exercise of
reasonable caution, ascertain the approach of a train and
await its passing and thus avoid contact. If the said Earl
Wilson heard the approaching train with which he collided, or
could have heard it by the exercise of ordinary care or other-
wise had knowledge that it was approaching the crossing where
the accident occurred, it was his duty to stop and wait its
passing, even though no whistle was sounded or bell rung,
unless acting as an ordinarily prudent man; he had reason to

believe he could get past the crossing in safety. If you find from the evidence in this case that as said Earl P. Wilson approached the crossing that he had such a view of the railroad track that, had he exercised ordinary care, he could have seen the approaching train or he could have heard such approaching train had he listened, and that, had he exercised ordinary care under all the circumstances surrounding him, he would have avoided the accident, then he was negligent, and plaintiff cannot recover. But if, under all the circumstances surrounding him, he did exercise ordinary care, then you cannot find that he was guilty of negligence.

This too has sufficient support in the precedents: *Bruggeman v. Railroad Co.*, 147 Iowa, 187, and cases cited.

VIII. The defendant asked the following instruction:

(4) Because there was no eyewitness to the accident, and no person who observed plaintiff's conduct at and just prior to his death, there is an inference due to the instinct of the love of life or desire for self-preservation that the plaintiff was exercising care on his part at that time. This, however, is nothing more than an inference and is not to be given any weight as against the facts and surroundings that actually existed as shown in the evidence at and about the place and time of the accident; therefore, if you believe from the evidence that by reason of the lay of the ground as shown in the evidence, the nearness of the highway to the railway, the light from the train, the rumbling of the same as it approached the crossing, the signals given, if any, the said Earl Wilson could have discovered the approaching train by the exercise of ordinary care on his part, then the inference of due care on his part has been fully overcome and the plaintiff has failed to establish her case, and you should find for the defendant.

*8. SAME: evidence: instinct of self-preservation: presumption.*

Instead of this, the court gave the following:

(10) Because there was no eyewitness to the accident, and no person who observed decedent's conduct at and just prior to his death, there is an inference due to the instinct of love of life, or the desire of self-preservation, that decedent

was exercising care on his part at that time. This inference, however, is not conclusive. It is to be considered by you in connection with all the facts and circumstances shown upon the trial, and, considering it with all the facts and circumstances shown upon the trial, it is for you to say whether or not the said Earl P. Wilson used ordinary care at the time of the accident. If you believe from the evidence that by reason of the situation and character of the crossing, the character and operation of the train, the manner in which it approached the crossing, the noise made by it and the signals given, if any, the character of conveyance in which said Wilson was traveling and the manner in which he was traveling, and all other facts and circumstances shown in evidence, including the inference that he had a love of life, that the said Earl P. Wilson exercised ordinary care at and just prior to the time he was struck by the train, then he was not guilty of negligence. But, if you believe he failed in any degree to exercise ordinary care, then he was guilty of negligence.

The one given seems to have support in our cases hitherto decided, and there was no error in denying the one asked. *Korab v. Railroad Co.,* 149 Iowa, 711; *Frederickson v. Railroad Co.,* 156 Iowa, 26; *Gray v. Railroad Co.,* 143 Iowa, 268; *Dalton v. Railroad Co.,* 104 Iowa, 26.

IX.    Closely related to the presumption of proper care on the part of the deceased due to the instinct of self-preservation as stated in the instruction given by the trial court is the cognate question of decedent's contributory negligence. The burden was upon plaintiff to show that deceased did not by any want of ordinary care on his part contribute to the injury which resulted in death.

9. SAME: negligence: burden of proof.

As there were no eyewitnesses of the transaction, the presumption of due care came to plaintiff's aid, and was sufficient to justify a finding in plaintiff's favor on this proposition, unless from the physical facts or the natural features of the locality it is apparent that deceased, had he exercised the degree of care required of him, could and would have avoided the collision. In other words, the presumption can-

not stand against positive and uncontradicted proof showing
that deceased must have been negligent, and that this negli-
gence contributed to his injury.  According to one of the latest
decisions of this court, the rule is as follows:

The presumption is more than a mere shadowy generality.
In the absence of direct evidence, the presumption supplies
its place, and, if the issue of contributory negligence is the
only obstacle to recovery, it is sufficient to support a verdict
for the plaintiff.  True this presumption may be overcome by
a showing of other circumstances from which the jury may
fairly conclude that deceased was not in fact exercising due
care; but in the nature of things this counter showing can
rarely be so overwhelming and conclusive as to make the
question whether the presumption has been fairly overcome
a matter of law.  See, also, *Bickel v. Railroad Co.*, 217 Pa.
456, (66 Atl. 756, 118 Am. St. Rep. 926).  .  .  .   Enough
has been said to show that, although it is not known what was
the particular occasion leading the deceased into the place of
danger, yet, so long as the mere act of his going between the
cars is not necessarily an act of negligence, the presumption
is that he was in the line of duty in so doing.  The cases cited
by appellee are not inconsistent with this conclusion.   In
*Brown v. Railroad Co.*, 69 Iowa, 163, there was direct evidence
by living witnesses of the material facts, and no presumption
could be indulged in, and it was affirmatively found by the
court that there was no 'emergency requiring any such expo-
sure to danger.'  In *Martensen v. Railroad Co.*, 60 Iowa, 705,
all the circumstances of the accident were shown in evidence,
and the court found that the act of the plaintiff 'was wholly
unnecessary, and that he was performing no duty' to his em-
ployer in so doing.  In *Haggerty v. Railroad Co.*, 90 Iowa, 405
the evidence 'showed without conflict that the injured person
was riding on the ladder without any reason for so doing.'  So
in all the precedents cited recovery was denied because of the
undisputed showing that the parties injured or killed were
acting 'without reason or excuse' (*Dillon's* Case, 118 Iowa,
645), or without 'having any duty there' (*Baker's* Case, 95
Iowa, 163), or for other sufficient reason which forbade the
indulgence of any presumption of care on their part.  To say
as a matter of law that deceased was guilty of contributory
negligence simply because he appears to have stepped between

the cars, or to say that his administrator may not go to the jury in this case because of failure of proof to negative want of care in taking the position of danger, is to abolish altogether the presumption of which we have spoken. It is the very absence of all direct human testimony which calls into activity the presumption that the deceased did not risk his life recklessly or without reasonable cause. This presumption may be strengthened or weakened by other proven circumstances; but generally it is for the jury to say whether it has been overcome. The testimony to which counsel for appellee refer, which tends to show that before leaving the side track on the night in question the train was inspected and reported to be in good order, affords a legitimate, but not decisive, circumstance bearing on this question whether there was any occasion for deceased to go between the cars; but it is not of such conclusive character as makes the question of contributory negligence one of law. *Korab v. Railroad*, 149 Iowa, 711.

Appellant very strongly insists that the testimony in this case clearly overcame the presumption, and that the verdict is without support in the testimony. This argument is based upon the premise that deceased had a clear and unobstructed view of the track upon which the train was approaching for more than six hundred and sixty feet, and that had he stopped, looked, and listened, or looked and used his senses of sight or hearing, he must have known of the approach of the train in time to have avoided the collision. The main trouble with this argument is that appellee disputes the premises, and avers that the jury might have found to the contrary.

In this connection it must be remembered that the jury was justified in finding that the train gave no warning of its approach to the crossing by blowing the whistle or sounding the bell; that it was running at a high rate of speed, and that it was an excursion train which made few stops, made up of an engine, a baggage car, four coaches, and a sleeper. It was also shown that the horse was thrown something like ninety feet eastward from this crossing, and that the buggy was crushed and destroyed. Between the place of accident and the overhead crossing to the westward there was a little

stream, over which the railway ran and along this stream was considerable timber, which was in leaf at the time of the collision. After the horse was struck the train ran a hundred rods or more before it could be stopped, and neither the engineer nor the fireman saw the deceased or the horse or buggy. The train was running downgrade, and there was testimony tending to show that one traveling on the east and west public highway could not have seen the approaching train until it had emerged from behind the trees which bordered the stream, which we have mentioned. Again, something like fifteen or twenty rods west of the crossing where the accident occurred there was a knoll or rise in the grounds which interfered with one's sight of the train after he had crossed this knoll and gone down the grade while traveling to the eastward. Just before the track reached the crossing, it had to pass through a slight cut, and there was also a cut in the highway at about the same place. In reaching the crossing a traveler went downgrade from the hill or knoll hitherto described, and for a short distance before reaching the crossing his back would be to an oncoming train. The stream to which we have referred also crossed the public highway and along its banks at this place were trees which obstructed the vision of a traveler after he passed over the stream passing toward the east until he got to the knoll or hill. It was, as counsel for appellant say, six hundred and sixty feet from the place where the railway crossed the stream to the place where the accident occurred, but because of the obstructions, which we have mentioned, a jury would have been justified in finding that the deceased could not have seen the train until it came from behind the trees, a distance of six hundred and sixty feet, provided the deceased was at or near the crossing when he saw the train, if he did see it. Running at the rate of fifty miles per hour the train would have covered this distance in about nine seconds. But deceased was evidently not upon the crossing when the train emerged from behind the trees; and, had he looked and listened at a place where he might have

seen a train approaching, it is doubtful if it would have saved him from the accident. The noise of the train was manifestly somewhat screened, not only by the trees, but also by the fact that the crossing toward the west was an overhead one, and either the cut for the railway or the fill for the highway crossing would not only obscure the headlight of the engine, but drown the sound of the approaching train. Even if the deceased had stopped on top of the knoll, he would not have seen the train because of the rate of speed at which it was approaching.

In view of the entire record, as to obstructions, the rate of speed of the train, the failure of the engineer, or fireman, to ring the bell, or sound the whistle, and the topography of the country, the further fact that neither the engineer nor the fireman saw the deceased, although the engine was running in such a manner that, if he had been in sight and deceased had been traveling along the highway, the headlight must have covered him, and the presumption arising from the instinct of self-preservation, we do not feel justified in saying as a matter of law that deceased was guilty of contributory negligence. The question was, as we think, one of fact for a jury, and the instructions correctly submitted this matter to it.

Lastly, it is contended that the instructions are inconsistent and conflicting. We have read them with care, and find no such conflict as would justify a reversal. Indeed, we find nothing inconsistent in the instructions. At no time did the court depart from the allegations of negligence stated in the fourth instruction, which we have quoted. The second instruction does not make any such departure. Indeed, the instructions seem to be reasonably clear and consistent.

Finding no prejudicial error in the record, the judgment must be, and it is, *Affirmed*.