Fred W. Dusold, Appellee, v. Chicago Great Western Ry. Co., Appellant.

Railroads: NEGLIGENCE: BURDEN OF PROOF. The burden is upon one alleging an injury sustained by collision of his automobile with railway cars at a crossing, not only to prove the negligence of the railway company and its proximate cause of the injury, but also to establish his own freedom from contributory negligence by showing that he did not do or omit to do that which a reasonably prudent man would do or omit for his own safety under like circumstances.

Same: CONTRIBUTORY NEGLIGENCE. Although a highway traveler is entitled to cross the tracks of a railway, he must exercise care in so doing commensurate with the danger involved.

Same: DUTY TO STOP, LOOK AND LISTEN. The duty of a traveler upon the highway when approaching a railway crossing to stop, look and listen for trains, depends upon the circumstances of the case. He is not required by any inflexible rule to do so under all circumstances. There may be circumstances under which it would be safer to proceed than to stop, and if it so appears to him as a reasonably prudent person his failure to stop may be excused. The question of reasonable care to discover and avoid approaching trains is ordinarily for the jury, dependent upon the particular facts.

Same: ABSENCE OF CROSSING SIGNALS: EFFECT. Absence of statutory signals will not relieve a traveler when about to cross railway tracks from using his senses to ascertain his danger, but is a fact to be considered in determining his exercise of reasonable care.

Same: CONTRIBUTORY NEGLIGENCE. Where the circumstances indicating danger are not such as to put a reasonably prudent person on his guard, omission to exercise more than ordinary care is not contributory negligence within the contemplation of the law.

Same: CONTRIBUTORY NEGLIGENCE: FACT QUESTION. Where plaintiff in approaching a railway crossing was induced to exercise less vigilance by failure of the company to signal the approach of its cars, the giving of which would have suggested greater diligence on his part, the company cannot complain of his want of diligence.

Upon the whole record the question of whether plaintiff was guilty of negligence contributing to his own injury was for the jury.

Same: CONTRIBUTORY NEGLIGENCE: ISSUES. The question of whether one in crossing a railroad exercised reasonable care does not depend upon when he could have seen the approaching cars, but whether in the exercise of reasonable care he might have seen and avoided the danger, and whether he exercised reasonable care for his safety in what he did or omitted to do at the time.

*Appeal from Dubuque District Court.*—HON. J. W. KINT-ZINGER, Judge.

TUESDAY, JULY 1, 1913.

ACTION to recover damages resulting from a collision between plaintiff's automobile and a train owned and operated by defendant.—*Affirmed.*

*Carr, Carr & Evans,* for appellant.

*Fitzpatrick & Frantzen,* for appellee.

GAYNOR, J.—This action is brought to recover damages for injury to plaintiff's automobile, resulting from a collision between it and cars belonging to and operated by the defendant, at the intersection of Chestnut street, in the town of Dyersville. The negligence charged by the plaintiff is: First, in permitting freight cars to remain on the street with an opening of about fifteen or twenty feet between the same, thereby obstructing the view of persons using the street, and preventing them from seeing cars switched or pushed along the track over said street; second, in negligently failing to have a flagman, or other person at the intersection to give warning of the approach of cars; third, in backing cars over and across the street without having any person on the front end to give warning of the approach; fourth, in negligently

backing or switching cars over and across the street on the track south of the track on which the freight cars, with the open passageway, were standing, without giving any warning or signal by whistle or bell. The issue also presented the question of plaintiff's freedom from negligence contributing to the injury of which he complains. The defendant filed a general denial. Upon the issues so joined, the cause was tried to a jury, and verdict and judgment rendered for the plaintiff. From the judgment so rendered, the plaintiff appeals.

At the request of the defendant, the court submitted to the jury the following special interrogatories:

"Interrogatory 1. With which of the three cars, which were moving across Chestnut street, did plaintiff's automobile collide?" to which the jury answered: "The first car."

"Interrogatory 2. How far from the stock track could plaintiff have first seen the cars with which he collided?" to which the jury answered: "Within ten feet."

The defendant predicates error on the following propositions: First, that the court erred in refusing to hold the plaintiff guilty of contributory negligence as a matter of law; second, that the court erred in overruling the motion to grant a new trial, for the reason that the answer to special interrogatory No. 2 is in conflict with the undisputed evidence in the cause.

The defendant does not challenge the sufficiency of the evidence to justify a finding that the defendant was guilty of negligence in respect to the matter charged. So in the consideration of this case, it will be assumed that there was sufficient evidence before the jury to justify a finding on its part that the defendant was guilty of the negligence charged against it, and that such negligence was the proximate cause of the injury of which plaintiff complains.

We turn our attention, therefore, to the evidence for the

purpose only of ascertaining whether or not the record shows such a state of facts, touching the conduct of the plaintiff himself, that the court should have found and determined that the plaintiff was guilty of such negligence contributing to the injury of which he complains that, as a matter of law, he was not entitled to recover, notwithstanding the negligence of the defendant.

The burden rested upon the plaintiff, not only to show that the defendant was guilty of the negligence charged against it, and that this negligence was the proximate cause of the injury of which he complains, but the burden also rested on him to show that at the time, and immediately prior to his injury, he was not guilty of any negligence on his part contributing to the injury or the condition out of which the injury arose. This burden being placed upon him, he was required to carry it to a successful issue. To recover, he must show that he did not do or omit to do that which a reasonably prudent and cautious man would not do or omit to do, for his own safety, under the facts and circumstances and conditions that then attended him.

1. RAILROADS: negligence: burden of proof.

To determine this matter necessitates an examination of the record as to what he did or omitted to do for his own safety, and what the facts, circumstances, and conditions were that confronted and surrounded him at the time he attempted to cross the defendant's tracks. The testimony submitted tends to show the following facts:

The defendant's tracks, at the point of collision, run east and west. Chestnut street crosses the tracks at right angles, running north and south. There were four tracks. A plank crossing was laid across the tracks. The planks were sixteen feet long and were laid to the west of the center of the street, the east end of the planks being about thirty feet from the east line of the street. The first track from the north is known as the lumber track. The next one south is known as the passing track, with a distance of four feet

four and one-half inches from the south rail of the lumber track to the north rail of the passing track. Just south of the passing track was the main line track. The distance from the south rail of the passing track to the north rail of the main line track was eleven feet nine and one-half inches. South of the main line track was the stock track. The distance from the south rail of the main line track to the north rail of the stock track was about twenty-three feet. At the time of the accident, an east-bound freight train stopped on the crossing at Chestnut street, on the main line. The train was cut, leaving a passageway between the cars. A portion of it, standing just over the east end of the planks, or a little more than thirty feet from the east side of Chestnut street, and a part on the opposite side of the opening stood even with the west side of Chestnut street, the portion of the train on the east side of the opening extending about two blocks eastward. The cars on the west side of the opening continued and extended westwardly for about a block. The street is about sixty-six feet wide at that point, so that the opening would be about thirty or thirty-five feet. It appears that, after the train was cut and was thus standing on the main line, the plaintiff came in his automobile from the north. The car was loaded with boys and men, some eight or nine in number. After the train was cut, the most westerly car on the east side stood about thirty feet out on the public street, so that in passing with an automobile, upon the plank portion of the street, he would be required to pass west of the center of the street, and within eight or nine feet of the car on the east side of the opening.

It appears that, at the time of the collision the defendant was switching on the track immediately south of that on which the train was standing, and at the time of the collision was running in a westerly direction on what is known as the stock track, or the track farthest south. There is evidence that the train at the time and just prior to the collision was moving at the rate of ten to fifteen miles an hour. There is

evidence that the bell was not rung as it approached the crossing; that no signal was given of the approach of the train; that there was no lookout on the car to warn passengers on the street of its approach. There is evidence that there was no flagman at the opening, or other person to warn passengers of the fact that a train was being operated to the south on the stock track. It appears there was only twenty-three feet between the south rail of the track upon which the cars were standing and the north rail of the track upon which the collision occurred.

It appears that, as the plaintiff approached the opening between the cars on the main track, or was in the act of passing through the opening, some one in his car called, "Look out!" He testifies that upon hearing this he quickly concluded that they were about to push the cars together, and that he increased his speed to escape from the peril, and that, when he was passing through the opening, he looked to the west. He first looked to the east, but could not see anything on account of the box cars. Then he looked to the west. He said:

When I was about halfway between the two tracks, I saw a box car coming over the crossing and from the east. I had my foot on the brake and pressed that down and grabbed the emergency and put that down. I hit the first car in the string between five and ten feet from the west end of it. When the man in the car said, 'Look out!' there was no cars in view on the track south. No cars had run across in front of me there. My brakes were in good condition. I think I was going about six miles an hour. After I struck the car, the freight train kept going on. I scraped some of the cars, I don't know how many. I backed up from the train. I can stop my machine within ten feet. I was about halfway between the main and stock tracks, when I saw the cars I struck. I could not see anything on the stock track until I reached a point where the seat I was sitting in was over the south rail of the main line, and at that point the front of the machine was more than fifteen feet from the north rail of the stock track. When I first saw

the car coming from the east, it was up to the plank crossing. I was about fifteen feet away from the track, traveling more to the west side of the planking than the center. As soon as I saw the cars, I applied the brake. I had almost stopped when I hit the car. I slewed a little to the west after I hit. I had my machine backed up before the train stopped. I did not hit the train very hard. I backed up while the train was dragging it along, after it had passed a car or two.

In the consideration of this case, the right of the plaintiff to cross the tracks in question, at the time and place when and where he attempted to cross, must be conceded. That he owed the duty to exercise reasonable care and 2. SAME: contri- caution in so doing to avoid injury is also conbutory negli- ceded. That a railroad track suggests danger gence. to the ordinary mind, and requires the exercise of care commensurate with the suggested danger will be admitted. That a failure to exercise such care when that failure contributes in any way to the injury has been held sufficient to defeat recovery.

It has been frequently held that it is the duty of one approaching a railway crossing to stop, look, and listen for the approach of trains before attempting to cross. The necessity for stopping, looking, and listening depends 3. SAME: duty upon the facts and circumstances of each parto stop, look and listen. ticular case. This court has never laid down this duty as a hard and fast rule under all circumstances. It will be borne in mind in this case that the plaintiff was required to pass over three tracks before reaching the one on which the collision occurred. Each track suggested danger; and, if we apply the rule literally, we would be required to hold that it was his duty, before attempting to cross any of the preceding tracks, to stop, look, and listen, and that if he failed to do so and received injury, he would not be entitled to recovery, as a matter of law. The distance between some of the tracks was so slight that it would be impossible for him to stop, look, and listen and still be in a point of safety. It might

appear to a reasonably prudent man·that to look and listen while proceeding forward would insure greater safety than stopping at any particular point. When approaching the track on which the train stood, to wit, the main line, the view of the plaintiff was obstructed by the cars to the east and to the west. A space of about thirty feet was left open, which afforded an apparent invitation to pass through at that point. He reached the point in safety. If he had stopped there, his view would still have been obstructed. The evidence tended to show that there was no warning given of any danger that might attend his proceeding forward through the opening. When he was passing through, or attempting to pass through, some one, occupying the same car with the plaintiff, called to him to "Look out!" He says that it then came to his mind that possibly they were about to close the opening, and that he then increased his speed for the purpose of escaping the peril which would arise in the event such an effort was made, and to avoid, as he said, being crushed between the cars. As he was in the act of passing through, he looked to the east, but his view was obstructed by the train. When he had passed between the cars, he looked to the right or to the west, saw nothing, and then looked to the east, and, at that time the train with which he collided was approaching from the east, and then nearly on the plank crossing on which he was driving. He immediately set his brakes and reached for the emergency brake and stopped his car as he reached the passing train.

We are of the opinion that the plaintiff's conduct should be judged in the light of all the facts and circumstances that then attended his act, and from that say whether or not a reasonably prudent and cautious man, having due regard for his own safety, would, under such facts and circumstances, have conducted himself as the plaintiff did. The plaintiff says that when he was about to cross between the divided train, he looked straight to the south; that his view to the east and west was obstructed by the train; that he saw no train on the south track, and heard no noise or signal indicating its approach;

that he believed, as he was passing through, that it was necessary to pass with some haste to avoid being caught between the cars. If this be true, it would be necessary for him to pass beyond the south line of the divided train before he would be in a place of safety. It was only twenty-three feet between the tracks; of course, necessarily, a less distance between the coaches on the two tracks, as they extended several inches over the rail.

It is true that a person approaching a railway crossing must be vigilant to discover the approach of trains and use reasonable care to avoid injury therefrom, but whether he has done so in a particular case is nearly always a question for the jury, and it depends on so many facts and circumstances and conditions that it is sometimes very difficult to say whether or not a party did, at a particular time, exercise that care. The conditions may be such that greater danger is suggested to his mind by stopping than would attend his proceeding forward. It is not necessary that the danger actually exists; but, if to him, acting as a reasonably prudent man, it appeared so, his conduct may be excused by reason thereof. While a railroad crossing suggests danger, the absence of danger signals, the absence of that which usually and ordinarily exists, which suggests danger, may have the effect of lulling the mind into a sense of security. As bearing upon this question, see *Lockridge v. M. & St. L. Ry. Co.*, 161 Iowa, 74; *Wilfong v. O. & St. L. Ry. Co.*, 116 Iowa, 548; *Selensky v. C. G. W. Ry. Co.*, 120 Iowa, 115; *Cummings v. Ry. Co.*, 114 Iowa, 85; *Bruggeman v. Ry. Co.*, 147 Iowa, 187; *Case v. Ry. Co.*, 147 Iowa, 747; *Hartman v. Ry. Co.*, 132 Iowa, 584; *Schulte v. Ry. Co.*, 114 Iowa, 94.

It is true that the absence of statutory signals does not relieve a party, attempting to cross a railway track, from the duty of vigilantly using all his senses to ascertain if there is

4. SAME: absence of crossing signals: effect.

danger in crossing, but this fact is proper to be considered by the jury, with all the other facts, in determining whether or not he exercised reasonable care and caution for his own safety.

Care in avoiding danger implies that there is, or would be, with all prudent persons, something to create a sense of danger. If the circumstances are not such as would put a prudent and cautious man upon his guard, the omission to exercise more than ordinary attention is not the negligence contemplated by law as contributing to the accident.

5. SAME: contributory negligence.

It is clearly true that, if the want of vigilance on the part of one injured was provoked and induced by the omission of a duty, which the other party owed to the party injured, and was the inducing cause of that want of vigilance, the other party ought not to be heard to complain. At least, it is a factor to be considered in determining the question of want of vigilance. Or, in other words, if the party charged with contributory negligence was led into the omission of an act of vigilance, which might have avoided the injury, by the omission of the complaining party to discharge some positive duty which he owed to the injured person, the performance of which would have suggested greater vigilance, and the want of which tended to lull him into the thought of security, the other party ought not to be permitted to profit thereby.

6. SAME: contributory negligence: fact question.

Upon the whole record we are satisfied that the court did not err in submitting the question of plaintiff's contributory negligence to the jury, and in overruling the plaintiff's motion for an instructed verdict, based upon that thought.

The second assignment of error we think is not well taken. The exact point at which the train could have been seen, had plaintiff looked immediately after passing between the opening on the main track, is not material to the proper determination of the question. The question is not when he could see, but when, by the exercise of reasonable care on his part, he could have seen and avoided the danger, and the further question, did he exercise reasonable care and caution for his own safety in what he did, or omitted to do at that particular time?

7. SAME: contributory negligence: issues.

We find no error in the record, and the care is therefore
*Affirmed.*