C. H. WOLFE, Appellee, v. CHICAGO GREAT WESTERN RY. CO.,
Appellant.

**Railroads:** PERSONAL INJURY: SPEED OF TRAIN: EVIDENCE. The evidence in this action is held to require submission of the question of the speed at which defendant's engine was being operated at the time plaintiff was struck and injured, and to support a finding that it was operated at a speed exceeding that fixed by an ordinance of the city.

**Same:** NEGLIGENT OPERATION OF TRAIN: EXCESSIVE SPEED: CONTRIBUTORY NEGLIGENCE. It is the duty of a railway company to operate its trains within the limits of the city at a rate of speed as fixed by an ordinance of the city; and one rightfully crossing the depot grounds and tracks with knowledge that the speed of trains therein was limited by ordinance, may regulate his own conduct with respect thereto, and may rely on the assumption that the company will not willfully disregard the ordinance.

**Same:** CONTRIBUTORY NEGLIGENCE. While one upon the terminal tracks of a railway must anticipate that trains are liable to pass over the tracks at any time, he may also expect that they will be operated at a lawful speed; and when plaintiff, having looked in the direction from which the engine came that struck him, saw no approaching engine within several hundred feet, he cannot be said as a matter of law to have been guilty of contributory negligence in continuing his course along the tracks for a distance of less than one hundred feet without again looking, where he knew that trains in that locality were limited to a speed of six miles per hour by a city ordinance.

**Same:** RELIANCE UPON ENGINE SIGNALS. The law requires that the bell shall be rung when an engine is passing through a terminal station; and one rightfully upon the terminal tracks may rely upon a discharge of that duty and govern himself accordingly.

**Same:** NEGLIGENCE: LAST CLEAR CHANCE: SUBMISSION OF ISSUE. The doctrine of last clear chance presupposes negligence on the part of plaintiff, discovery of which requires defendant to exercise reasonable care to avoid injuring him; but where plaintiff was walking between the tracks at a terminal station and in no danger at that point, but was immediately struck when he stepped upon the

track, defendant's duty to stop the engine only arose when it be-
came apparent that plaintiff was about to step upon the track,
and as no time elapsed between his doing so and the accident, sub-
mission of that issue as a ground of recovery without qualification
or informing the jury of the defendant's duty in respect to the
matter was prejudicial error.

*Appeal from Polk District Court.*—HON. CHAS. S. BRADSHAW,
Judge.

WEDNESDAY, JUNE 24, 1914.

ACTION for personal injury.—*Reversed.*

*Carr, Carr & Evans,* for appellant.

*A. G. Rippey* and *Parker, Parrish & Miller,* for appellee.

GAYNOR, J.—The Des Moines Union Railway Company's
terminal station building and depot grounds extend west from
Fifth street to some distance beyond Sixth avenue. Fifth
street and Sixth avenue run north and south. Cherry street
is immediately north of the depot building, and Wagner street
immediately south of the station grounds. These streets run
east and west. Sixth avenue is closed, and does not extend
through the station ground. The tracks of the terminal com-
pany are immediately south of the station, and extend east
and west. There are six sets of tracks, two tracks immediately
south of the depot building. South of these two tracks is a
long train shed. Immediately south of this train shed is the
third track, running directly east and west, from Fifth to
Eighth street. Immediately south is the fourth track. Im-
mediately south of that the fifth track. Immediately south of
that the sixth track. Tracks four and five parallel track three
until they approach Fifth street from the west. They then
curve to the north. At the time of the accident complained of,
there were what is called cross-over walks, paved walks lead-
ing across the tracks three and four. One of these cross-over

walks is situated about the center of the depot building, and the other some distance west of the center of the building; each extending directly south over the tracks. A large portion of the space, between the tracks, is paved with brick west of Fifth street, and some distance west of Sixth avenue. The brick paving between the fourth and fifth tracks narrowed as it approached Fifth street. These tracks were used by the defendant, the Milwaukee, the Minneapolis & St. Louis, the Wabash, and the Chicago, Burlington & Quincy Railway Companies, for receiving and discharging passengers, and for unloading and loading baggage and express, and a great number of trains arrived and departed over these tracks each day.

The evidence tends to show that on the morning in question, at about 7:30 o'clock, plaintiff came from his office at the Burlington depot, south and east of Fifth street, to the Des Moines Union Terminal Company's Station, on business connected with his company. He was, at the time, local freight agent of the Chicago, Burlington & Quincy Railway Company. The business he came to transact was with a messenger on an outgoing Burlington train, which was standing on the fourth track, just west of the cross-over, and just west of the west line of the cross-over. The train was headed east. After the plaintiff had completed the business with the agent on this train, he started east, on the north side of the train, to the cross-over. When he reached the cross-over, he passed diagonally south and east, over this crosswalk in front of the train standing on track four, and then turned east, between tracks four and five, and proceeded east to a point about eighty feet east of this cross-over walk, when he claims he was struck by the rear of the tender of an engine, belonging to the defendant, which was backing east, on track five, hauling a dining car. At the time he was struck, he was attempting to pass south over track five, and was in the act of passing over this track when struck. He claims that he was knocked violently a distance of at least fifteen feet, and fell between the

1. RAILROADS: personal injury: speed of train: evidence.

tracks; that the engine then came upon him and pushed him and rolled him to the east, a distance of seventy-four feet, when he managed to escape from the moving engine.

Plaintiff claims that after he left the messenger and proceeded eastward and reached the cross-over walk he then passed diagonally, on the cross-over walk, to the space between tracks four and five. That after he got in the clear, and before he proceeded further east, he looked to the west, up track five. That he could see five or six hundred feet up the track to the viaduct, which is on Seventh street. He saw no train or engine upon track five at that time. That no train or engine was in sight, on track five, west of the point where he turned to go eastward. That he continued walking between tracks four and five, towards the east, without looking back. That, when he had walked about eighty feet, he turned to the south and attempted to cross track five. That, while he was in the act of doing so, he was struck by the engine.

It is claimed that the engine that struck the plaintiff was at a point fifteen or twenty feet west of Seventh street, at the time it started eastward; that the east line of Seventh street is six hundred and thirty one feet west of the west line of Fifth street; that Seventh street is sixty-five feet wide; that the total distance from the west side line of Fifth street to the point where the backward movement of the engine began was something over seven hundred feet. From this, it is claimed that while the plaintiff was walking eighty feet, or thereabouts, the defendant's engine had moved about seven hundred feet. Plaintiff testified that he was walking five or six miles an hour. If these figures are approximately correct (and there was evidence in the record to support them), the defendant's engine, after it started from Seventh street, must have been moved at a speed greatly in excess of the legal limit. The place where the train started, as we have given it here, is fixed by the defendant's witnesses. The plaintiff claims that, after he had cleared the cross-over walk and started to proceed east, he looked backward. The evidence tends to show that there was a clear view, on track five to Eighth street, far beyond the

point from which it is claimed it started. He says he looked to see if there was any train upon the track. He said he saw none. He said there was none. It was for the jury to say, from the evidence, at what point the defendant started its engine. It was for the jury to say at what speed the engine was run.

Under plaintiff's contention, it would be absolutely essential that the defendant run its engine at a very high rate of speed in order to reach the point where plaintiff was struck, at the same time that plaintiff reached that point. That is, the train must necessarily have been operated at a high rate of speed, to reach the point where plaintiff was struck, while the plaintiff was walking eighty feet, at the rate of five or six miles an hour, if plaintiff's contention is true.

We think from this record that the jury might be justified in finding that the company operated its engine in excess of the legal limit, fixed by the ordinance of the city, six miles an hour. If the engine had been standing at Seventh street at the time plaintiff looked, and the plaintiff had seen it standing there, and from that point it had been operated at a rate of six miles an hour only, or if plaintiff had reason to believe, when he looked, that it would be operated at a lawful rate of speed, the plaintiff might well have assumed that he had plenty of time to pass the point where he was struck, before the engine could have reached that point.

It is claimed that the plaintiff was guilty of contributory negligence in that he did not look again before attempting to cross track five; that it was not sufficient, to exculpate him, that he looked at the point where he says he looked.

It was the duty of the defendant company to operate its train at a speed not to exceed the limitation imposed on it by law. This was a duty it owed to all affected by the regulation.

2. SAME: negligent operation of train: excessive speed: contributory negligence. This regulation was made for the benefit of the public. Therefore it was a public duty. A violation of this duty constitutes negligence. One who is injured by its violation may complain and have redress, if injured. The injured party had a

right, in so far as his own conduct was concerned, to rely on compliance with the duty imposed; a right to regulate his conduct on the assumption that the party charged with the duty would not willfully disregard it. Therefore, one who approaches a place that suggests danger has a right to consider the duty, imposed by law, on the party from whose act alone the danger may arise, and a right to assume that the party charged with the duty will not willfully disregard his obligation. When he approaches a point that suggests danger, but which, under the conditons then apparent to him, involves no danger, he naturally assumes that the duty will be observed and, if observed, no danger will arise, and he ordinarily proceeds forward upon the assumption that an unforeseen danger will not be created, by the unlawful act of the party out of whose conduct the danger arises.

Nearly every relation in life and every act is bottomed on the perhaps unconscious presumption that those with whom we deal will do the thing that is right; will recognize and observe the duties they owe to us, be it either a legal or a moral duty. No one is either morally or legally bound to know that another will neglect a positive duty.

Can one be held guilty of negligence, as a matter of law, who, observing a condition in which no peril or danger appears, acts on the assumption that there is no danger, if, thereafter, perchance, a condition does arise, through the wrongful and negligent act of another, which he, as a reasonably prudent man, had no reason to anticipate would arise? Or, in other words, is one guilty of negligence as a matter of law because he does not anticipate and foresee that another may disregard his duty and impose conditions that he has no right to impose and which the injured party could not, in the exercise of reasonable precaution for his own safety, have anticipated and foreseen? It is true that common experience teaches men that others do neglect their duty, even positive duty, and that out of this perils and dangers do arise. Therefore the law has wisely

3. SAME: contributory negligence.

provided that each man shall exercise, for his own safety, reasonable care and caution to avoid dangers incident to such negligence, on the part of others, and has said to the injured party that, though injured by the negligence and carelessness of another, he cannot recover, if, by the exercise of reasonable care on his part, he could have foreseen, anticipated, and avoided the injury of which he complains.  Or, in other words, ·if, by his own carelessness for his own safety, he has contributed to the injury he has sustained.  While the law is well settled that one may recover damages of another if he suffers ·injury through the negligence of another, yet it is also well settled that such recovery cannot be had, if, by his own carelessness and negligence, he has contributed to the condition, of which he complains, out of which the injury arose.

Applying these propositions, concretely, to the case at bar, and taking plaintiff's version of the facts, we find that the plaintiff, after he had gotten around the engine, where he had a free opportunity of observing the condition of track five, looked up the track a distance of four hundred, five hundred or six hundred feet, and saw no train approaching. He knew that the city regulated the speed of trains, and that the defendant had no right to operate its trains exceeding six miles an hour.  He had only eighty feet to go before he would pass onto track five.  He might well assume that there was absolutely no danger attending his act, if the defendant's train was operated in accordance with the speed regulation. Was the plaintiff therefore negligent in not anticipating that they might run their train greatly in excess of this speed, and was he therefore negligent in not guarding himself against such a possible contingency?  Or, in other words, can we say, affirmatively, that the plaintiff, in the position he was at that time with the knowledge he had from his observation, the knowledge he had of the speed limitation imposed, did not act as a reasonably prudent man would act under like circumstances?

Does an act of negligence, on his part, so affirmatively

appear that reasonable minds might not differ touching this matter? Or can we affirmatively say that a reasonably prudent man, under such circumstances and conditions, would have conducted himself differently than the plaintiff did at this point? If not, it is a question for the jury. If there is any rational, reasonable theory of the case developed by the evidence, under the issues made, which after a just consideration of all the evidence would justify the jury in finding that the plaintiff is not guilty of contributory negligence, then we must permit the verdict to stand.

It was for the jury to weigh the evidence, and if they were justified in reaching the conclusion that the defendant company was operating its train at a speed greater than that fixed by law, and that the plaintiff's injuries were the proximate result of such negligence on the part of the defendant, and if the jury were further justified, under the evidence, in finding that the plaintiff, under the conditions that then existed, used ordinary care for his own safety, or, in other words, that the injury was without any failure of the plaintiff to use ordinary care in anticipating the danger, from the approach of the engine, then, so far as the question of contributory negligence is involved in this suit, the verdict should be permitted to stand. The law is well settled on this question.

We are asked to reverse this case on the ground that the evidence shows, without conflict, that the plaintiff was guilty of negligence contributing to his injury, in that he failed to exercise reasonable care to avoid the danger incident to his act. The testimony of plaintiff, as a witness, tended to show that after he had left the messenger on the Q. train, after he had come to this cross-over walk, that he turned diagonally over this walk to the south and east; that he then looked backward and saw no train approaching on track five, and thereupon he proceeded eastward, without further precaution for his safety, until he was overtaken and injured by impact with the tender of the engine. Now having looked to the west,

after reaching a point where he could observe track five, having an unobstructed view for four hundred, five hundred or six hundred feet, and having seen no engine approaching upon this track, knowing that the defendant was limited in its speed to six miles an hour, can it be said that he was guilty of negligence in that he did not assume that the defendant might carelessly and negligently exceed this speed, and overtake him before he had crossed the track?

It is said in *Camp v. Ry. Co.*, 124 Iowa, 238, a case very similar in its facts to this, and we quote the language because it is apropos to the situation here:

But it appears from his testimony (the plaintiff's) that, when he looked eastward at the frog along the track, it was unobstructed to such a distance that he could have seen an approaching engine, if near enough to him to overtake him, approaching at a rate of six miles an hour, the maximum speed allowed by the city of Marshalltown, before he should reach the toolhouse, and, if he did look, and there was no engine or train in sight coming from that direction, and near enough, approaching at that rate of speed, to overtake him before reaching the toolhouse, he was not guilty of contributory negligence in not looking again before reaching the toolhouse.

In the case at bar, there is no claim that plaintiff's view was obstructed, and therefore that he should have assumed a greater caution on that account, in approaching the track. He says, and his evidence tends to sustain him, that he could see westward for a distance of five hundred, six hundred or seven hundred feet. Of course, it is the duty of every one, in his own conduct, to exercise reasonable care and caution for his own safety, and especially is this incumbent on him when in a place of danger. This duty is ever present with him, and the necessity for self-preservation suggests it to the mind.

But, in a case like this, while the plaintiff was bound to know that engines and trains would be running on these tracks at any time, was he bound to know and anticipate that

they would come at an unlawful rate of speed, without warning?

The plaintiff claims, and there is evidence to sustain his claim, that the bell on the engine was not rung, and was not ringing as it came to the point where plaintiff was. The law required the bell to be rung. To a certain degree, the plaintiff in this case had a right to rely upon the defendant's discharging this duty, and to govern himself accordingly.

4. SAME: reliance upon engine signals.

This question of ordinary care, of watchfulness, involves so many considerations in determining whether it was observed, that in nearly every case it becomes a question for the jury. We think it is peculiarly a question for the jury here, and the case ought not to be reversed upon this ground.

This disposes of the first error assigned and relied upon by the defendant. See *Case v. C. G. W. Ry. Co.*, 147 Iowa, 747, in which it is said:

One about to cross a railway track has a right to assume that trains will not be run at an unlawful rate of speed; that the usual and customary warnings will be given; and that the railroad company will comply with its duty in approaching street crossings.

It is next contended that the court erred in the statement of the issues to the jury.

We have examined this question, and find that the issues as presented by the pleadings were fairly stated. Whether there was evidence to support these issues is a different question. Issues presented by the pleadings, upon which no evidence is offered, ought not to be submitted.

If negligence is predicated upon conduct, which, if proven, is not actionable negligence, a proper remedy is to move to strike it out, or it should be assailed by demurrer, or in some other way that directs the attention of the court to the fact that the acts charged as constituting negligence are not actionable under the law.

II. It is claimed that the court submitted to the jury the doctrine of last clear chance, and of this the defendant complains in the following language: First. The court erred in submitting the doctrine of last clear chance to the jury under this record. Second. If there was room for the application of the doctrine, it was erroneously submitted.

5. SAME: negligence: last clear chance: submission of issue.

Plaintiff in his petition claimed that the defendant was negligent in that defendant's engineer negligently failed to keep a lookout for, and to warn plaintiff of, the approach of the engine as plaintiff approached and passed upon the track in said station, and negligently failed to stop the engine in time to have prevented injury to the plaintiff, and it is complained that the court set out this specification of negligence in full in its charge to the jury, and that the court said to the jury that in determining defendant's negligence they were to consider whether, in the exercise of ordinary care, defendant's engineer could have stopped his engine in time to have prevented the injury to the plaintiff. The court, upon this point, said to the jury:

In determining whether the defendant was negligent, you will consider, so far as shown by the evidence, the nature and character of the business in which the defendant was engaged; the location where the accident is alleged to have occurred, and the surroundings thereabout; the manner in which defendant's engine was moving through said station, at said time and place; and the facts and circumstances relating thereto, whether the engine bell was rung, or other alarm given, to indicate the approach of the engine; whether the engine was run at a rate of speed prohibited by the ordinances of the city; whether, at said time and place, the engine was run at a greater speed than was proper, in the exercise of ordinary care; whether the defendant's engineer failed to keep a lookout, and to warn the plaintiff of the approach of the engine; whether, in the exercise of ordinary care, defendant's engineer could have stopped the engine in time to have prevented the injury to the plaintiff; what the defendant's employees in charge of said engine were doing, or, in the exercise of ordinary

care, should have done; what the defendant's employees in charge of the engine knew, or, in the exercise of ordinary care should have known; together with any other facts and circumstances disclosed by the evidence, showing, or tending to show, that the defendant was or was not negligent, as charged by the plaintiff.

It is claimed by the defendant that there is no evidence upon which the jury could possibly have found that the defendant, by the exercise of ordinary care, could have stopped the engine in time to have prevented the injury, after discovering plaintiff's peril. The jury might have been justified in finding that the engineer did see plaintiff as he was proceeding eastward between tracks four and five. He claims that he was looking. If he were looking, he must have seen him. He said:

'I was watching my track all the time, watching when I got to the cross-over, watching Fifth street in case somebody might cut across.'

No peril attached to plaintiff's position while he remained between the tracks, and it is claimed that the engineer had no reason to anticipate that he would attempt to pass in front of the engine, and that therefore he owed him no duty to stop the engine until he discovered his attempt so to do. The undisputed evidence shows that the engine could not be stopped so as to avoid injury to the plaintiff, after he stepped upon the track; that the plaintiff continued his course eastward between the tracks four and five; that, during the time he was upon this paved walk between the tracks, he was not at a point of danger. He could not have been injured had he continued between the tracks, and no duty arose, on the part of the company, towards the plaintiff until it became apparent to those in charge of the engine that the plaintiff was about to leave the place of safety and assume a position of peril.

It is apparent, from the whole record, that it is true that while plaintiff was between the tracks, upon the brick walk

there laid, he was at a point where he had a right to be, and at a point of safety. He was rightfully upon the station grounds and rightfully upon this walk. This ground and tracks were used by the defendant and other companies. These walks were used by many people having business with these companies, and the very arrangement provided there, the paving between the tracks, the crosswalks, were all an invitation to use, and with this condition the duty arose, on the part of the company, to exercise reasonable care to avoid injuring those who were within the exercise of their legitimate rights in the use of these walks. It would be an extraordinary doctrine to hold that, under the conditions, such as existed at this time and place, the company was under no obligation to keep a lookout and give signals of the approach of its train; that it could run blindly up and down these tracks, under the conditions that surrounded them, even at a lawful rate of speed, without signal or warning to those who might be in a place of danger.

The case of *Ressler v. Wabash Railway Co.*, 152 Iowa, 449, and cases therein cited, hold to the doctrine that, where a duty to keep a lookout exists, a failure to perform this duty is negligence. A failure to discover the peril, where the duty to look out exists, which might have been discovered by the performance of this duty, and a failure to stop the engine and avoid the injury, is actionable negligence. The failure to keep a lookout in a case of this kind is so interwoven and so associated with a failure to act that they cannot be disassociated. You cannot consider them apart, and in that case it was said:

'The court may direct the jury that if in its judgment, in view of all the' conditions shown to exist, 'reasonable care requires the enginemen . . . to anticipate the possibility of collision with persons rightfully' at the point, 'and to keep a lookout in approaching it in order to avoid such accident, then the omission so to do will be negligence.'

The doctrine of last clear chance always presupposes negligence on the part of the plaintiff, upon the discovery of which the duty of the defendant arises, and that duty consists in the obligation to avoid injuring him after discovering his negligence, and his peril, if such can be accomplished by the exercise of reasonable care.

It is claimed that the court submitted this case to the jury on the doctrine of last clear chance, and that it erred in this, because of the fact, disclosed by the evidence, that the plaintiff was not in a position of peril up to the very moment of the collision; that he was in a position of safety between the tracks, and the peril did not arise until he voluntarily removed himself from the position of safety into the position of danger; that there was no interval of time between the act by which he placed himself in the position of peril and the collision, in which the train could have been stopped; that even with a lookout, even with knowledge of the plaintiff's position, prior to the collision, the defendant company was under no obligation to stop its train until it became apparent, to those in charge of the train, that the plaintiff was about to remove, or was in the act of removing, himself from the place of safety to the place of danger.

The plaintiff in his petition, as his fourth specific charge of negligence against the defendant, said:

Defendant was negligent in that its engineer negligently failed to keep a lookout for and to warn the plaintiff of the approach of said engine as plaintiff approached and passed upon the said track in said station, and negligently failed to stop said engine in time to have prevented injury to this plaintiff.

The court, in stating the issues to the jury, repeated this charge of negligence as the third distinct ground upon which plaintiff predicated a right to recover, stating it in the words in which it was pleaded, and again, in the fifth paragraph of its instruction, the court said to the jury:

The plaintiff in its petition alleges that the defendant was negligent in the following respects, among others: In that defendant's engineer negligently failed to keep a lookout for and to warn the plaintiff of the approach of said engine, as plaintiff approached and passed upon said track, and negligently failed to stop said engine in time to have prevented the injury to the plaintiff.

And said to the jury that, in determining whether defendant was guilty, they should consider whether, in the exercise of ordinary care, defendant's engineer could have stopped his engine in time to have prevented injury to the plaintiff, and further said to the jury that if the employees of the defendant, in charge of the engine, are proven to have been guilty of any of the acts of negligence charged by the plaintiff in his petition, as set forth in these instructions, such act or acts, if acts of negligence, would be the negligence of the defendant.

Negligence is always predicated upon a failure to discharge some duty which the party charged owes to the party injured. It therefore becomes important in every case to know what the duty is that was violated upon which the negligence is predicated.

The defendant had a right to operate its train upon these tracks at a lawful rate of speed. Assume that it was its duty to keep a lookout, to ring the bell, and to give warning of the approach of the train. Assume that it was its duty not to exceed the limit of speed fixed by the ordinance. Assume that it had done all these things. Assume that it discovered the plaintiff walking between tracks four and five upon the brick walk prior to the collision. Was it the duty of the defendant company to anticipate the action of the plaintiff, and to foresee that he might pass from the point of safety to a place of danger in front of the engine, and to stop its train in anticipation of such possibility? Or had the company a right to rely upon the assumption that the plaintiff would continue

in his position of safety and would not voluntarily go upon the track in front of the approaching engine?

As the defendant had a right to run its train upon this track at a lawful rate of speed, as plaintiff had a right to be upon this brick walk, the duty of the defendant to stop its train did not arise until it became apparent to the defendant that the plaintiff was about to assume a position of peril upon the track.

The jury could well have found, under the evidence, that the defendant could have stopped its engine at any time prior to the injury and thereby avoid collision with the plaintiff; but its duty to do so did not arise until it discovered the plaintiff in the act of attempting to cross the track in front of the engine, and the undisputed evidence shows that there was no interval of time, between that attempt and the collision, in which the engine could have been stopped. The court therefore left it to the jury, as a basis for negligence, to say whether the company could have stopped its engine before the collision, and impliedly said to the jury that if it could have done so, and injury occurred, recovery might be had, without telling the jury when that duty arose, and without any evidence to show that the engine could have been stopped after the discovery of the plaintiff's peril.

With these several stated grounds of negligence submitted to the jury, separately, as a basis for recovery, it is not possible to determine on which of the several grounds the jury based the liability of the defendant. To tell the jury that they may base liability on a state of facts, the existence of which the evidence negatives, or to tell them that they may base liability, as for negligence, upon a state of facts which, in themselves, and of themselves, as a matter of law, do not constitute negligence, is prejudicial error.

In view of the sharp conflict in the evidence, as to every ground of negligence charged, the jury might have found in favor of the defendant on every specification of negligence

made by the plaintiff, except this one charged by the plaintiff, to wit:

Defendant was negligent in that its engineer negligently failed to keep a lookout for and warn the plaintiff of the approach of the engine as the plaintiff approached and passed upon the track in said station, and negligently failed to stop said engine in time to have prevented injury to the plaintiff.

Further, the jury might have found, under this specification of negligence, that the engineer did keep a lookout and did warn the plaintiff of the approach of the engine as it approached the plaintiff, and before plaintiff stepped upon the track, and while he was in the position of safety, yet it might have found, under this instruction, that the defendant was negligent in that it failed to stop the engine before it reached the point where plaintiff was injured; that if, instead of giving warning of its approach, it had stopped the engine before reaching the point where plaintiff was walking, plaintiff would not have been injured. It is true, without question, that if it had stopped its engine before it reached the place where the plaintiff attempted to cross the track plaintiff would not have been injured.

This instruction placed too great a burden upon the defendant; a burden that, under the law, it is not required to bear. Its duty to the plaintiff to stop the engine did not arise upon discovering him between tracks four and five in a place of safety, but only when it became apparent to the party in charge of the engine that the plaintiff was about to cross the track in front of the engine. The instruction submitting to the jury, as a basis for recovery, this particular charge of negligence, without qualification, and without informing the jury as to the duty of the defendant, in respect to this matter, is prejudicial when we consider that the plaintiff, in his own testimony, showed that he was in a position of safety where there would be no duty, as a matter of law, upon the engineer to stop the train, up to the very moment

he was struck, and when we consider the further fact that the engineer had a right to assume that plaintiff would stay on the pavement between the tracks and not attempt to cross the track in front of the engine until it became evident to the engineer, in some way, that the plaintiff was about to cross the track. There can be no claim that the engineer could have stopped the train after the plaintiff started across the track, for the plaintiff says he was struck the very moment he put his foot upon the track.

We think there was prejudicial error in submitting this charge of negligence to the jury, without the qualifications as hereinbefore explained. See *Clemens v. C., R. I. & Pac. Ry.*, 163 Iowa, 499; *Bruggeman v. Illinois Central Ry. Co.*, 147 Iowa, 187; *Bourrett v. Chicago, North Western Ry. Co.*, 152 Iowa, 579.

For the error pointed out, we think the case ought to be —*Reversed.*

LADD, C. J., and DEEMER, WEAVER, and WITHROW, JJ., concur.