LAURA N. HUNT, Administratrix, Appellee, v. FREDERICK A. DELANO et al., Receivers of the Wabash Railroad Company, Appellants.

RAILROADS: Contributory Negligence—Crossing Accident—Facts
1 Reviewed. Evidence reviewed and *held*, question of contributory negligence was for the jury.

PRINCIPLE APPLIED:   The "Q" railway tracks, in a thickly settled portion of the city, crossed a north and south street in a northeast and southwest direction; 120 feet south of this crossing the "Wabash" tracks crossed the same street in a direction northwest and southeast.  The deceased coming south with a single horse and buggy approached the "Q" tracks; was warned to look out by one who heard a noise and thought it a train but had seen nothing.  Deceased hurried over the "Q" track just behind a passing handcar; just then the "Wabash" freight, one hour late, and running 25 to 30 miles per hour in violation of an ordinance limiting speed to 6 miles per hour, appeared in sight at the tower 150 feet west and north of the intersection with the street.  Deceased stopped his horse apparently 15 to 60 feet from the "Wabash" crossing but only momentarily, because the horse became unmanageable from fright; the train crossed the street crossing, the horse turned to the left parallel with the train, threw deceased out and under the train and he was killed.  The view west of the tower was at least quite fully obstructed by trees and buildings.  *Held*, that the question of contributory negligence was for the jury.

*Appeal from Monroe District Court.*—HON. C. W. VERMILION, Judge.

WEDNESDAY, FEBRUARY 17, 1915.

ACTION for damages for negligence resulting in the death of Lynch Hunt.  There was a verdict and judgment for the plaintiff of $2,000.  The defendant appeals.—*Affirmed.*

*Perry & Perry* and *N. E. Kendall*, for appellants.

*Mabry & Hickenlooper*, for appellee.

EVANS, J.—The plaintiff is the administratrix of the estate of the decedent.  The defendants are the receivers of the Wabash Railroad Company.  The accident under consideration occurred on August 21, 1912, in the city of Albia, on Third Street at the point of intersection of such street with the Wabash railway.  Third Street runs north and south. Decedent was approaching the railway intersection from the

north and was riding alone in a buggy drawn by a single horse. The railway line runs from northwest toward the southeast. The train involved in the collision was a freight train and was running southeasterly. One hundred twenty feet north of this intersection with the Wabash railway, the same street has an intersection with the C. B. & Q. railway (referred to in this record as the Q railway). The following diagram is sufficient indication of the *locus quo:*

The plaintiff's petition charged negligence in the speed of the train and in the failure to give warning by bell or whistle. It further averred that by reason of such negligence the

**1. RAILROADS:** **contributory** **negligence:** **crossing acci-** **dent: facts** **reviewed.**

decedent lost control of his horse which he was driving from the north in the direction of the track and that while attempting to control the horse and protect himself he turned the horse to the left and parallel with the track and was thereby thrown out of his buggy and against or under the third or fourth car in the train and was thereby killed. The answer was in substance a general denial and a plea of contributory negligence. Several assignments of error are

presented by the appellant but they all center upon one general contention, viz.: that the decedent was not shown to be free from contributory negligence and that it was conclusively shown as a matter of law that he was guilty of contributory negligence and that a verdict ought to have been directed for the defendant on that ground. The point was appropriately made at the close of the evidence and later in the motion for a new trial. The accident in question was witnessed by several witnesses. The train in question was running one hour late. When the decedent was driving south and when he was within a very few feet of the Q intersection he received a warning of "look out" from another teamster. The person giving the warning had heard a noise and believed that a train was coming but he had not seen it and did not then know upon which track it was coming. What the decedent understood by the warning above quoted is a matter of inference only. He quickened the pace of his horse either by a stroke of the whip or by the lines and appeared to hasten across the Q track. A moving handcar on this track was within his view and was allowed to pass the intersection ahead of him. Between this intersection and that of the Wabash railway was a distance of 120 feet. It is the contention of the defendants that from this point on he urged his horse forward in an effort to cross the tracks ahead of the approaching train and that he neither stopped, looked or listened nor took any precaution for his own safety. There is considerable evidence, however, that shortly after he had crossed the Q track the train came into view as it passed the tower 150 feet west of the intersection and that the decedent brought his horse to a "standstill" for a very brief time and then appeared to lose control of him by reason of his fright. The distance at which he actually stopped is put by the different witnesses at from 15 to 60 feet. Indeed a clear preponderance of the evidence shows that the horse was frightened and that the decedent was apparently unable to control him and that this occurred within the range of the distance already indicated. The horse turned

to the left and took the right of way parallel with the track. The decedent was thrown out of his buggy toward the train at a point on the right of way about 20 feet east of the intersection. The horse was not struck by the train.

It is urged for appellant that if the decedent had looked he could have observed the approaching train for a long distance west of the tower. The contention in argument at this point is much stronger than the evidence. The view was obstructed by buildings and many trees then in foliage. There may have been a point where an opening could be found but even this is by no means clear in the evidence.

It is urged for the appellant that the decedent was necessarily negligent in hastening across the Q crossing and in putting himself in a position of danger between the two crossings. But in hastening across the Q crossing he put himself in danger of collision only with the Q train. He did not thereby put himself in any danger of collision with the Wabash train. Surely it cannot be said as a matter of law that a man is guilty of negligence in driving an ordinary horse to a point within 60 feet or 15 feet of a train. True, he might be deemed negligent as a proposition of fact but this would not aid the contention of appellant. The place of collision was in a thickly settled part of the city. The ordinance limited the speed of trains to 6 miles an hour. According to plaintiff's evidence this train approached and crossed the intersection at a speed of 25 or 30 miles an hour. That the evidence was sufficient to support the charge of negligence against the railway company is not questioned.

Upon the record before us the question of contributory negligence was clearly one for the jury and the defendant was not entitled to a directed verdict thereon. Our previous cases in support of this holding are many. The following recent cases will be sufficient citation: *Case v. C. G. W. Ry. Co.,* 147 Iowa 747; *Warn v. C. G. W. Ry. Co.,* 149 Iowa 450; *Dusold v. C. G. W. Ry. Co.,* 162 Iowa 441; *Davitt v. C. G. W. Ry. Co.,* 164 Iowa 216.

No other errors are presented for our consideration. The judgment below must, therefore, be—*Affirmed.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.