MRS. GEORGE L. BUTTERFIELD, Administratrix, Appellee, v. CHI-
CAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**RAILROADS:** Accidents at Crossings—Negligence at Crossing. Evi-
1 dence relative to the backing of a train across a public crossing
at an excessive and illegal rate of speed, without warning signals,
reviewed, and held clearly to present a jury question on the issue
of negligence.

**RAILROADS:** Accidents at Crossings—"Look and Listen" Rule.
2 Principle reaffirmed that, if a traveler does look and listen within a
reasonable distance of a railway crossing, the question whether he
was negligent for not again looking and listening at some *other*
place is for the jury, and not for the court. So held where the
looking and listening were some 40 feet from the point of crossing.

**RAILROADS:** Accidents at Crossings—Contributory Negligence—
3 Instant Lapse of Care. A traveler who has, at a reasonable time
and place, looked and listened for a train at a railway crossing, may
not be declared negligent *per se* because later he did not, during a
period of three or four seconds, look for an unheralded danger.

**RAILROADS:** Accidents at Crossings—Applicability of Speed-Limiting
4 Ordinance. An ordinance regulating the speed of railway trains
within a city applies to a much used crossing, even though it is
well on the outskirts of the city.

*Appeal from Marion District Court.*—L. N. HAYS, Judge.

NOVEMBER 22, 1921.

REHEARING DENIED MARCH 11, 1922.

ACTION at law, begun by George L. Butterfield, to recover
damages for personal injury. Before the case came on for trial,
Butterfield died, and his wife, as administratrix of his estate,
was substituted as plaintiff. There was a verdict for plaintiff,
and from the judgment entered thereon, the defendant appeals.
—*Affirmed.*

*J. G. Gamble, R. L. Read,* and *W. H. Lyon,* for appellant.

*Vander Ploeg & Johnson,* for appellee.

Weaver, J.—The accident occurred in the town of Knoxville, Iowa, at the intersection of Seventh Street, extending north and south, and the main track of defendant's railway, extending east and west. West of this crossing and on the north side of the railway track was the plant of the Knoxville Clay Products Company, spoken of in the record as the "tile works," or "tile plant," consisting of a shed, office, and several kilns. A driveway entrance to this plant extended from Seventh Street, at a point 80 feet north of the crossing, west to the north side of the buildings, and parallel to the track. The works were in operation, and the deceased, with Murphy, an employee, was delivering coal to the kilns. In performing this service, they made use of an auto truck driven by Murphy. On the day in question, after delivering a load of coal, they undertook the return trip, going east along the driveway to Seventh Street, thence south across the track. As they reached Seventh, a witness, Urban Hill, driving an auto to the south, passed immediately in front of them. Murphy checked the speed of the truck, to permit Hill to take the lead, then, turning in immediately behind him, followed the auto to the crossing. Hill crossed in safety; but, as Murphy's truck entered upon the track, it was struck by a train moving eastward. The deceased was badly injured, both arms being broken, and he sustained other wounds and bruises. Murphy was not seriously injured, but the truck was ruined. In this action to recover damages, the defendant is charged with negligence as follows: (1) In failing to give warning or signal of the train's approach to the crossing; (2) in operating its train at an excessive speed, in violation of a city ordinance; (3) in operating its train at a dangerous rate of speed where the view of the crossing was obstructed; and (4) in operating its train with cars ahead of the engine, without watchman or guard placed in front.

The defendant denied the charges of negligence, and alleged contributory negligence on the part of the deceased.

There was a jury trial. At the close of the plaintiff's testimony in chief, defendant moved for a directed verdict in its favor, because of the insufficiency of the evidence to sustain the charge of negligence, and on the further ground that deceased was chargeable with contributory negligence, as a matter of

law. The motion was denied. At the close of all the evidence, the motion to direct was renewed and overruled. There was a verdict for the plaintiff, judgment accordingly, and defendant appeals.

I. That the evidence sustains the jury's finding of negligence on the part of the defendant, there is no room for reasonable doubt. The facts admitted, or of which there is competent evidence, tend to show that the train was made up with a box car and pile driver car ahead of the engine, and, without guard or watchman at the front, was being driven over the crossing at a speed of 25 to 30 miles per hour, without warning or signal of its approach, and in violation of a city ordinance limiting its speed within the corporate limits to 6 miles per hour. Defendant put none of its trainmen on the stand; and, except for a witness or two who say they heard a signal whistle, the testimony on the part of the plaintiff, so far as it relates to the plaintiff's allegations of negligence, is practically undenied. So clear is the record upon this issue that we shall take no time for argument or discussion. The trial court did not err in refusing to direct a verdict exonerating the defendant from the charge of negligence.

1. RAILROADS: accidents at crossings: negligence at crossing.

II. The defendant's main reliance below and in this court is upon the proposition that deceased is chargeable with contributory negligence, as a matter of law. In support of this theory, engineers, photographers, and other witnesses were examined, showing the location and surroundings of the crossing, from which it is argued that, if deceased or Murphy had looked west after turning into Seventh Street, they could have seen the approaching train; and upon that assumption, it is insisted that, in failing to discover the danger, they were, of necessity, and as a matter of law, negligent. This contention, that if, by use of engineering instruments or by laying a "straight edge" upon a map or blue print made at leisure after the tragedy is over, it is made to appear that, if the traveler on the highway had looked from some designated station or standpoint, and if the train had then been in the direct line of vision, he could have discovered it and avoided a collision, the court must say, as a

2. RAILROADS: accidents at crossings: "look and listen" rule.

matter of law, that his failure to do so is contributory negligence, is one which has been, with great persistence and tireless repetition, urged upon the court during the half century and more of the era of railway development in Iowa; and, with here and there a slight sporadic departure from the settled rule, we have steadily held that, if the traveler is shown to have looked and listened when within reasonable distance of the crossing, the court will not attempt to say, as a matter of law, that he is guilty of contributory negligence because he did not look or listen again at some other designated point, from which he might possibly or even probably have discovered the train. He is not charged with the duty of discovering at his peril every danger which perfect care and caution may reveal to him. The extent of his duty is to exercise the care of a person of average or reasonable prudence; and, it being shown that he did look and listen within a reasonable distance of the crossing, the question whether he ought to have looked or listened again, at some other point or place, is for the jury, and not for the court. See *Davitt v. Chicago G. W. R. Co.*, 164 Iowa 216; *Harper v. Barnard*, 99 Iowa 159; *Schulte v. Chicago, M. & St. P. R. Co.*, 114 Iowa 89, 94; *Willfong v. Omaha & St. L. R. Co.*, 116 Iowa 548; *Dusold v. Chicago G. W. R. Co.*, 162 Iowa 441, 447; *Moore v. Chicago, St. P. & K. C. R. Co.*, 102 Iowa 595; *Hartman v. Chicago G. W. R. Co.*, 132 Iowa 582, 584; *Mackerall v. Omaha & St. L. R. Co.*, 111 Iowa 547; *Winey v. Chicago, M. & St. P. R. Co.*, 92 Iowa 622; *Case v. Chicago G. W. R. Co.*, 147 Iowa 747, 752; *Barrett v. Chicago, M. & St. P. R. Co.*, 190 Iowa 509; *Wolfe v. Chicago G. W. R. Co.*, 166 Iowa 506; *Platter v. Minneapolis & St. L. R. Co.*, 162 Iowa 142; *Gray v. Chicago, R. I. & P. R. Co.*, 160 Iowa 1; *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa 187; *Lorenz v. Burlington, C. R. & N. R. Co.*, 115 Iowa 377; *Rupener v. Cedar Rapids & I. C. R. & L. Co.*, 178 Iowa 615, 617. The foregoing is by no means an exhaustive list of the precedents in point, but they are sufficient to suggest the gravity of the situation which would be created in our case law if the appellant's revolutionary contention in this case were to be adopted.

The evidence, including the plats and photographic exhibits, shows that the crossing and its surroundings are materially obscured, not only by the structures of the tile works extending

3. RAILROADS: accidents at crossings: contributory negligence: instant lapse of care. along substantially parallel to the track, but also by the natural inequalities of the surface of the earth in that vicinity, and by standing trees, brush, and poles; and that the approach to the crossing from the west is through a cut. It is shown without dispute that a person driving from the tile works to Seventh Street cannot see past the tile shed along the track to the west, until reaching the turn at the intersection. This intersection is described by Murphy as a "long turn," and his estimate is that, when his truck was straightened out into Seventh Street behind the auto of the witness Hill, he was about 40 feet from the track. From this point he could see west past the tile works, and he says that they looked in both directions, to see if any train was in sight, and discovering none, they continued to follow Hill to the south and over the crossing. He swears that, while he did not look again, he continued to listen, until the collision occurred. His impression is that Butterfield kept his face to the west, but he cannot speak with certainty. He heard no alarm by bell or whistle, and no sound of the moving train. Hill corroborates Murphy as to their approach to the crossing with Hill leading. He also says that he heard neither bell nor whistle nor noise of train, until the crash of the collision, when he looked around, and saw deceased lying in the road in the ruins of his truck. Other witnesses near at hand testified to the absence of warnings and signals, and unite in placing the speed of the train at from 25 to 30 miles per hour. Murphy, speaking of his conduct from the time he looked west and discovered no train in sight, says:

"I thought we had plenty of time to make the crossing at the regular rate of speed, the way trains usually travel there. I did not look, after that, because I thought we would have plenty of time for the crossing. I always looked and listened for the train before I made the turn. After we turned into Seventh Street, we probably averaged 8 to 10 miles an hour."

If his estimate of the distance traveled after looking west, 40 feet, is right, or even if counsel for defendant be correct in their insistence that it was 70 feet, the truck would cover that distance in not to exceed three or four seconds; and it would be a very drastic holding to say that a driver guiding and man-

aging his truck is to be conclusively chargeable with negligence because for an instant his eye was not exploring the distance for an unheralded danger. Again, the fact that he was being preceded by Hill constitutes a diverting circumstance not wholly without bearing upon the question of his reasonable care. Again, he was entitled to assume that, if a train was approaching, it would be managed with reasonable care for the safety of others in lawful use of the crossing, and with reasonable regard to the requirements of the statutes of the state and ordinances of the city. He would not, of course, be justified in shutting his eyes and ears and failing to make reasonable use of his senses, but the fact that such laws and regulations exist is a very material matter to be considered upon the question whether he did act with due care. This we have held too often to justify an attempt to. collate all the precedents. We call attention, however, to the very pertinent language by Deemer, J., in *Platter v. Minneapolis & St. L. R. Co.*, 162 Iowa 142, 158; by Gaynor, J., in *Dusold v. Chicago G. W. R. Co.*, 162 Iowa 441, 450; by Gaynor, J., in *Wolfe v. Chicago G. W. R. Co.*, 166 Iowa 506, 510; by Evans, C. J., in *Rupener v. Cedar Rapids & I. C. R. & L. Co.*, 178 Iowa 615, 617, 618; by Deemer, C. J., in *Case v. Chicago G. W. R. Co.*, 147 Iowa 747, 751; by Given, J., in *Moore v. Chicago, St. P. & K. C. R. Co.*, 102 Iowa 595, 600; by Ladd, J., in *Barrett v. Chicago, M. & St. P. R. Co.*, 190 Iowa 509; and by Withrow, J., in *Davitt v. Chicago G. W. R. Co.*, 164 Iowa 216, 222.

Referring to the *Barrett* case, upon this question, counsel for appellant dispose of it by declaring that "it is finally at rest," and express the desire to "let it rest in peace." But if it is proposed to bury in oblivion this, our latest pronouncement on the law of contributory negligence in crossing cases, the grave must be made wide enough and deep enough to receive and hide the 50 or more other cases in which the *Barrett* case has its foundation and support. The arguments urged by counsel have but one logical conclusion, and that is that a person using a public railway crossing must assume all the risk of its negligent or reckless misuse by the company, if by any possible measure of caution the danger can be discovered and avoided. That such is not the law is too manifest for discussion. It may be, as

counsel say, that "times have changed," but no change of time or circumstance can justify the judicial repudiation of a fundamentally sound principle of law or justice. The question of contributory negligence in the instant case was clearly for the jury, and the trial court properly refused to hold otherwise.

III.   The appellant requested the court to instruct the jury that the testimony showed without dispute that the crossing in question was in a rural or unsettled part of the corporate ter-

4. RAILROADS: accidents at crossings: applicability of speed-limiting ordinance.
ritory, and that, because thereof, the speed of the train in excess of the ordinance limit of six miles per hour would not constitute negligence on part of the company. The request was denied, and error is assigned thereon.

We find no error in the ruling complained of. That the crossing was within the city is admitted, though it appears to be near the boundary line. Seventh Street is one of the principal streets or avenues of connection between the main part of the city and the county highway system, and is largely used. The tile works employ 30 hands, who use this route; customers and persons having business with the Products Company approach it and leave it over this street; the railway company maintains a siding, apparently to facilitate shipments to and from the works; the land on the south side of the track is cut up into small acreage tracts, on which there are a number of homes. We see no good reason for saying that the crossing thus located and thus surrounded does not come within the reasonable scope of the protection provided by the ordinance. There was no such showing of facts as would justify either court or jury in finding that the ordinance was invalid, or that the defendant was exempted from its observance. *Larkin v. Burlington, C. R. & N. R. Co.,* 85 Iowa 492.

We find no reversible error in the record, and the judgment of the district court is—*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.